Henry O. BOYD, Sr.,
Petitioner-Appellant,

v.

Robert J. HENDERSON, Superintendent,
Auburn Correctional Facility,
Respondent-Appellee.

No. 788, Docket 76–2158.

United States Court of Appeals,
Second Circuit.

Argued Feb. 15, 1977.

Decided May 16, 1977.

Arthur T. Cambouris, New York City (The Legal Aid Society, William E. Hellerstein, William J. Gallagher, and Lawrence H. Sharf, New York City, of counsel), for appellant.

Mark C. Rutzick, Asst. Atty. Gen., of N.Y., New York City (Louis J. Lefkowitz, Atty. Gen. of N. Y. and Samuel A. Hirshowitz, First Asst. Atty. Gen. of N.Y., New York City, of counsel), for appellee.

Before LUMBARD and TIMBERS, Circuit Judges, and KNAPP, District Judge.*

WHITMAN KNAPP, District Judge:

Petitioner Henry O. Boyd, Sr., appeals from the denial by the United States District Court for the Eastern District of New York, Bruchhausen, J., of an application for a writ of habeas corpus made pursuant to 28 U.S.C. §§ 2241 and 2254. Boyd was convicted, after a jury trial in the New York State Supreme Court, of forcing his way into and looting the Brooklyn Heights apartment of one Fredricka Riordan. The only identifying witnesses were Mrs. Riordan and her employee, Mary Arrington, who were in the apartment at the time of the robbery. On this appeal, Boyd contends that the procedures used by the New York authorities to secure their identification testimony violated his constitutional rights to due process of law and to the assistance of counsel. We find that the testimony concerning Mrs. Riordan's identification presents no error of constitutional dimensions. With respect to Mrs. Arrington's, we find that any such error was harmless beyond a reasonable doubt. Accordingly, the order appealed from is affirmed.

I

On June 23, 1971, two men forced their way into the apartment of Fredricka Riordan in Brooklyn Heights, New York. After locking Mrs. Riordan and her employee in a closet, the men looted the apartment.[1] Before being forced into the closet, Mrs. Riordan, a college graduate who described herself as having an "excellent visual memory," had a clear view of one of the assailants from a distance of one foot, for a period of approximately thirty-five seconds. Mrs. Arrington, the other victim, was also able to observe the man's face. Accordingly, Mrs. Riordan gave the police a rather detailed description of one of the robbers, in which Mrs. Arrington concurred. They described him as the taller of the two men, as a black male in his late 20's or early 30's, over six feet tall, with a lean muscular build, an Afro hair style, discolored front teeth, and armed with a silver pistol. Mrs. Riordan recalled that the man had "drooping" eyes and wore a white short-sleeved shirt and khaki-type pants.

At about the time of the robbery, a bartender who worked across the street from Mrs. Riordan's apartment noticed two men removing several items from the building and loading them into a parked car. His suspicions aroused, he took down a description of the car and its license number, which he later gave to the police.

The car thus observed by the bartender proved to be a stolen vehicle, and about a month later on July 24, 1971 petitioner Boyd was found sitting in that car. He was arrested and charged with its theft. At his first arraignment on that charge, he was assigned counsel and ordered to appear in two weeks for further arraignment.

In the meantime, the arresting officer notified Detective Glen J. Fitzgerald, who was charged with the investigation of the Riordan robbery, that Boyd apparently fit the description of one of the assailants given by the two women. Fitzgerald thereup-

---

* Of the Southern District of New York, sitting by designation.

1. Although two men were involved in the robbery, only Boyd was apprehended.

on asked both Mrs. Riordan and Mrs. Arrington to be present for Boyd's arraignment on the stolen car charge, so that they might determine whether he was one of the robbers. Fitzgerald told the women that Boyd fit their description and had been arrested in the vehicle apparently used in the robbery.

Mrs. Riordan appeared at the arraignment on August 10, 1971, but Mrs. Arrington was unable to attend. Boyd was one of many defendants to be arraigned on that day, and Fitzgerald instructed Mrs. Riordan to observe all of the defendants as they appeared and to inform him "when you see the fellow, who did it—committed this robbery at your residence." After sitting in the courtroom for approximately twenty minutes and observing several defendants, including six to eight who were black, stand up for arraignment, Mrs. Riordan saw Boyd and immediately identified him as one of her assailants. Three days later, at the preliminary hearing on the ensuing robbery charge, Mrs. Riordan testified that Boyd was one of the robbers. Immediately after the hearing, Mrs. Riordan told Mrs. Arrington that Boyd was clearly one of their assailants.

Boyd was subsequently indicted, and on March 7, 1972, the court held a *Wade* hearing. Both Fitzgerald and Mrs. Riordan then testified that neither had known when Boyd would appear at the stolen car arraignment, and that neither had heard Boyd's name called out in court. Fitzgerald further testified that he had never before seen Boyd and therefore could not, and did not, signal to Mrs. Riordan when Boyd appeared.

After Mrs. Riordan had thus testified and identified Boyd, Mrs. Arrington was called as a witness. Defense counsel objected to her appearance on the grounds that (1) she had not identified Boyd in the eight and one-half months since the crime, (2) Boyd was the only defendant and the only black male in the courtroom, and (3) Mrs. Arrington knew that Mrs. Riordan had positively identified Boyd and that Boyd had been apprehended in the car used for the robbery. Nevertheless, despite counsel's request that a lineup be conducted, Mrs. Arrington was permitted to testify. She identified Boyd as one of the two men who had committed the robbery.

Defense counsel's motion to suppress the identifications of both witnesses was denied and both were permitted to testify at Boyd's trial. On direct examination, Mrs. Riordan again identified Boyd, and in addition described her identification of Boyd at the car theft arraignment. Mrs. Arrington also identified Boyd on direct examination, but it was only on cross-examination that the details of her *Wade* hearing identification were brought out. The only other evidence presented by the state was the testimony of the investigating officers and that of the bartender who had noted the license plate number of the car in which Boyd had ultimately been arrested. Boyd did not testify and presented no evidence.

On May 12 the jury found Boyd guilty of robbery in the first degree, grand larceny in the third degree, and burglary in the second degree. After the judgment of conviction had been affirmed without opinion by the Appellate Division, Second Department, Chief Judge Breitel denied leave to appeal to the New York Court of Appeals.

On June 4, 1976, Boyd filed a petition for habeas corpus in the Eastern District, essentially repeating the claim unsuccessfully pressed in the state courts. In an unpublished Memorandum and Order filed July 23, 1976, Judge Bruchhausen denied the application. This appeal followed.

This case presents essentially three questions:

1. Was Mrs. Riordan's arraignment identification (to which she testified on direct examination at trial) conducted in an impermissibly suggestive manner?
2. Was that identification conducted in violation of Boyd's sixth amendment right to the assistance of counsel?
3. Was Mrs. Arrington's in-court identification of Boyd based on an impermissibly suggestive confrontation at his *Wade* hearing?

For the reasons which follow, we hold that no error of constitutional dimensions is presented by Mrs. Riordan's identification testimony, and that any such error involved in the admission of Mrs. Arrington's testimony was harmless beyond a reasonable doubt.

## II

With respect to Mrs. Riordan's testimony, Boyd contends that its admission in evidence constituted constitutional error because (1) the circumstances in which she made her identification at the stolen car arraignment were impermissibly suggestive, thus making it violative of due process to permit her to testify at trial about that identification and rendering it impossible for her to make an untainted identification at the trial itself, and (2) the arraignment identification was conducted in such a manner as to violate his sixth amendment right to counsel.

### A. The Due Process Claim

■ It is well settled that "impermissibly suggestive" identification procedures are inconsistent with due process. *See, e. g., Brathwaite v. Manson* (2d Cir. 1975) 527 F.2d 363, 366–71, *cert. granted* (1976) 425 U.S. 957, 96 S.Ct. 1737, 48 L.Ed.2d 202; *United States v. Reid* (2d Cir. 1975) 517 F.2d 953; *United States ex rel. John v. Casseles* (2d Cir. 1973) 489 F.2d 20, 24, *cert. denied* (1975) 416 U.S. 959, 94 S.Ct. 1976, 40

L.Ed.2d 310; *United States ex rel. Gonzalez v. Zelker* (2d Cir. 1973) 477 F.2d 797, 801, *cert. denied* (1974) 414 U.S. 924, 94 S.Ct. 254, 38 L.Ed.2d 158. Thus under the test mandated by *Stovall v. Denno* (1967) 388 U.S. 293, 301–02, 87 S.Ct. 1967, 18 L.Ed.2d 1199,[2] evidence of Mrs. Riordan's identification at the August 10 arraignment must be excluded if, under the "totality of the circumstances," the confrontation was "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to violate due process.

■ The *Stovall* "totality of the circumstances" standard requires that we examine both the likelihood of irreparable misidentification and the need for the particular identification procedure employed. *See Brathwaite v. Manson, supra,* at 370; Pulaski, *Neil v. Biggers,* The Supreme Court Dismantles the *Wade* Trilogy's Due Process Protection (1973) 26 Stan.L.Rev. 1097, 1107–08. We hold that the circumstances of Mrs. Riordan's identification of Boyd on August 10 were not so unnecessarily suggestive as to violate due process. It is therefore immaterial whether any other or different procedures could have been pursued.

On the evidence we are bound to accept,[3] there can be no reasonable question as to the reliability of Mrs. Riordan's identification of Boyd at the arraignment. Boyd was one of at least six black defendants who appeared for arraignment and Mrs. Riordan had no idea when or where he would ap-

---

**2.** We held recently that the Supreme Court's decisions in *Simmons v. United States* (1968) 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 and *Neil v. Biggers* (1972) 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401, did not affect the vitality of *Stovall* with regard to post-*Stovall* identifications. *Brathwaite v. Manson, supra,* at 371.

**3.** We must accept the Fitzgerald/Riordan version of the arraignment identification, for no contrary evidence was introduced. Of course, had petitioner's counsel on the car theft charge been advised of the identification procedure then taking place, he could have equipped himself to subject Fitzgerald and Mrs. Riordan to meaningful cross-examination regarding their description of the arraignment confrontation. Thus, although the record before us reveals no evidence that Mrs. Riordan's identification was tainted by impermissible suggestion, and al-

though the writer of this opinion—based on personal experience in the arraignment parts of New York City criminal court—thinks it highly probable that the Fitzgerald/Riordan version of the events was substantially correct, the fact remains that we are left without the support of meaningful cross-examination. For example, had Boyd's attorney (who was present in the courtroom) known that identification proceedings were in progress, he would—at the very least—have insisted that Mrs. Riordan and Detective Fitzgerald be placed in such positions that they could not see or communicate with each other. We would then not have to rely upon possibly interested testimony to establish that the detective had not—consciously or unconsciously—prompted the witness' identification.

pear. Neither Mrs. Riordan nor Detective Fitzgerald heard Boyd's name called or was otherwise apprised that Boyd had entered the room. Therefore, Mr. Riordan's instantaneous and firm identification of Boyd could only have been the product of her unaided ability to recognize him as one of the men who had robbed her. Conceding that informal courtroom confrontations may in some instances be so potentially and unnecessarily suggestive as to violate due process, *see, e. g., Sanchell v. Parratt* (8th Cir. 1976) 530 F.2d 286, 292–95; *United States v. Luck* (6th Cir. 1971) 447 F.2d 1333; *Clemons v. United States* (1968) 133 U.S. App.D.C. 27, 408 F.2d 1230, 1240–41 (en banc), *cert. denied* (1969) 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567, we find that no such suggestiveness was present in this case.[4] Mrs. Riordan's testimony concerning that identification therefore presents no question of due process, and the subsequent trial identification was free of taint.

### B. *The Sixth Amendment Claim*

■ The more difficult question concerns the sixth amendment claim. Boyd notes that he had been assigned an attorney in connection with the automobile theft charge, and complains that the Riordan

---

4. Indeed, in our view, this courtroom confrontation was more reliable than a traditional lineup. In a lineup situation, there is always the danger that the identifying witness, knowing that he or she must pick out someone or admit failure, will settle for a suspect who resembles but in fact is not the actual assailant. Here there was no such danger. Mrs. Riordan was called upon to pick the robber out of a continuous stream of men appearing in the court for arraignment, and there was no suggestion that Boyd would be the last man to appear. Thus there never came a moment when she had either to act or admit failure.

5. In *Saltys v. Adams* (2d Cir. 1972) 465 F.2d 1023, this court was presented with a factual situation similar to that at bar. Judge Oakes, speaking for a majority which decided the case on another ground, opined that under *Kirby* the question that we have posed could arguably be answered in the affirmative (465 F.2d at 1027). The problem has been touched upon in two other cases, *Sanchell v. Parratt* (8th Cir. 1976) 530 F.2d 286 and *Thomas v. Leeke* (D.S.C.1975) 393 F.Supp. 282, neither of which resolved it. In *Thomas v. Leeke,* the district court, citing the majority's dictum in *Saltys,* concluded that

identification, conducted without notice to him or his attorney and "in their unknowing presence" (appellant's brief at 29), abridged his sixth amendment right to counsel. This claim presents a question of first impression in this circuit, namely: where counsel has duly appeared for a defendant in connection with an alleged crime, are such counsel and defendant entitled to be advised of an attempt to identify him as the perpetrator of another crime, especially where—as here—counsel is actually present while the identification is going on? This question must, of course, be answered under the guidance of *Kirby v. Illinois* (1972) 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411.[5]

The right to counsel at identification confrontations was first recognized in *United States v. Wade* (1967) 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. There, the Court held a pretrial lineup to be a "critical stage of the prosecution" at which the defendant is entitled to the assistance of counsel (388 U.S. at 227–39, 87 S.Ct. 1926). *See also Gilbert v. California* (1967) 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. In *Kirby,* the Court clarified its *Wade* and *Gilbert* decisions by holding that the right to counsel at

---

*Kirby* permitted a holding that defendant's right to counsel had attached. In *Sanchell v. Parratt,* the Eighth Circuit reached the opposite conclusion. Of course, in each of these three cases, the statements regarding the *Kirby* question were

> "deliberately given the status of . . . judicial dictum by the Court[s] uttering [them] . . . which while of great significance and entitled to this Court's respect does not preclude this Court from reaching its own decision after independent consideration and study of the question."

*United States v. Bell* (2d Cir. 1975) 524 F.2d 202, 206 n.4, quoting from *Perlman v. Timberlake* (S.D.N.Y.1959) 172 F.Supp. 246, 253. *See also Kastigar v. United States* (1972) 406 U.S. 441, 454–55, 92 S.Ct. 1653, 32 L.Ed.2d 212, *reh. denied* 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345; *Powell v. McCormack* (1969) 395 U.S. 486, 519 n.40, 89 S.Ct. 1944, 23 L.Ed.2d 491; *Cohens v. Virginia* (1821) 19 U.S. (6 Wheat.) 264, 398, 5 L.Ed. 257 (Marshall, C. J.); *Connecticut Action Now, Inc. v. Roberts Plating Co.* (2d Cir. 1972) 457 F.2d 81, 84–85.

identification procedures attaches only with the initiation of adversary criminal proceedings, such as by formal charge, indictment, or arraignment.

As we noted earlier (see note 3, supra), it is apparent that the attorney representing Boyd in the automobile larceny case could have provided him with valuable assistance had they been aware that an identification confrontation was taking place. While the record contains no evidence undermining the credibility of either Detective Fitzgerald or Mrs. Riordan, it is clear that the absence of counsel during the confrontation made more difficult meaningful cross-examination of either witness at the subsequent Wade hearing. It follows, under the original rationale of United States v. Wade, supra, at 233–37, 87 S.Ct. 1926,[6] that it would have been useful to provide Boyd with counsel at the Riordan confrontation.

However, as we read Kirby, we are precluded from speculating as to how "useful" it might have been for Boyd to have had the help of counsel while the identification procedures were in progress. Although none of the opinions (plurality by Mr. Justice Stewart, concurrences by the Chief Justice and Mr. Justice Powell) dealt with the precise question posed by this case, it is our reading of all of those opinions that they intended to hold that the sixth amendment right to counsel attaches only when there has been a "formal charge, preliminary hearing, indictment, information" (406 U.S. at 689, 92 S.Ct. at 1882) with respect to the particular crime as to which the suspect is

being identified. Nothing in the language of those opinions leads us to conclude that the Court would have deemed it relevant that the suspect was represented by counsel in connection with some other crime. Nor is it relevant that the actual presence of defendant's lawyer on the scene would have made it very easy for the police to have invited him to participate in the identification procedures. As to that, we adopt Judge Friendly's views in dissent[7] in Saltys v. Adams (2d Cir. 1972) 465 F.2d 1023. He there observed (at 1030):

> "the narrowing of Wade and Gilbert by Kirby did not rest on the difficulty in getting a lawyer at all pre-prosecution lineups but rather on an interpretation of the Sixth Amendment." (Footnote omitted.)

We therefore hold that Boyd had no constitutional right to be represented by counsel at the Riordan identification.

### III

Finally, petitioner attacks the admission of Mrs. Arrington's in-court identification. He argues, essentially, that Mrs. Arrington's in-court identification at trial was based on her initial confrontation with petitioner at the Wade hearing on March 7, where there existed a substantial likelihood of irreparable mistaken identification.

We agree that the Wade confrontation was impermissibly suggestive. The state elicited Mrs. Arrington's identification while petitioner was the only black male

---

**6.** The Wade court observed, 388 U.S. at 235–37, 87 S.Ct. at 1936–38 (footnote and citations omitted):

> "Insofar as the accused's conviction may rest on a courtroom identification in fact the fruit of a suspect pretrial identification which the accused is helpless to subject to effective scrutiny at trial, the accused is deprived of that right of cross-examination which is an essential safeguard to his right to confront the witnesses against him.
>
> . . . Thus in the present context, where so many variables and pitfalls exist, the first line of defense must be the prevention of unfairness and the lessening of the hazards of eyewitness identification at the lineup itself.

> . . . Since it appears that there is grave potential for prejudice, intentional or not, in the pretrial lineup, which may not be capable of reconstruction at trial, and since presence of counsel itself can often avert prejudice and assure a meaningful confrontation at trial, there can be little doubt that for Wade the post-indictment lineup was a critical stage of the prosecution at which he was 'as much entitled to such aid [of counsel] . . . as at the trial itself.'"

See also Simmons v. United States (1968) 390 U.S. 377, 383, 88 S.Ct. 967, 19 L.Ed.2d 1247; Brathwaite v. Manson (2d Cir. 1975) 527 F.2d 363, 372, cert. granted (1972) 425 U.S. 957, 96 S.Ct. 1737, 48 L.Ed.2d 202.

**7.** See fn. 5.

and the only defendant in the courtroom. Furthermore, the confrontation occurred eight and one-half months after the crime and Mrs. Arrington had never before identified Boyd. Finally, and perhaps most significantly, Mrs. Arrington knew that Boyd had been apprehended in the get-away car and that Mrs. Riordan was certain the police had the right man. Given all the circumstances, it is clear that Mrs. Arrington

> "took the witness stand believing that she would see the man arrested in the get-away car, the man identified by Mrs. Riordan as the robber, and the man who had been formally accused of the robbery. To make matters worse, when she looked around the courtroom there was no choice of suspects."

(Appellant's Brief at 18.) Applying the standard of *Stovall v. Denno, supra, see* note 2, *supra,* we must conclude that the Arrington identification was overwhelmingly suggestive. It should be noted that the respondent has not even tried to justify the prosecutor's indulgence in these impermissible procedures in the face of Boyd's specific and articulate objection. *See Stovall v. Denno, supra,* 388 U.S. at 302, 87 S.Ct. 1967; *United States v. Kaylor* (2d Cir. 1973) 491 F.2d 1127, 1131–32, *modified on other grounds* 491 F.2d 1133, *vacated on other grounds sub nom. United States v. Hopkins* (1974) 418 U.S. 909, 94 S.Ct. 3201, 41 L.Ed.2d 1155.

Nevertheless, the state, perhaps recognizing this to be so, did not introduce evidence of Mrs. Arrington's pretrial identification as part of its case. Mrs. Arrington mentioned the earlier identification only on cross-examination. From this the state argues that the propriety of Mrs. Arrington's pretrial identification is irrelevant, since there was a sound independent basis for her in-court identification. *See Brathwaite v. Manson, supra,* at 369; *United States v. Evans* (2d Cir. 1973) 484 F.2d 1178, 1186 n.8.

We agree with appellant that the improper pretrial confrontation would be immaterial only if Mrs. Arrington's trial testimony were found to be independently reliable. *See Simmons v. United States, supra,* 390 U.S. at 384, 88 S.Ct. 967; *Brathwaite v. Manson, supra,* at 370–71; *United States ex rel. Phipps v. Follette* (2d Cir. 1970) 428 F.2d 912, 914 n.2. We need not decide the question of independent basis, however, for we hold that admission of the in-court identification was, at most, harmless error.

In view of Mrs. Riordan's positive and convincing identification buttressed by the wholly unexplained fact that Boyd was arrested in the very automobile that carried the loot from Mrs. Riordan's apartment, we cannot conceive that Boyd would not have been convicted regardless of whether or not Mrs. Arrington had testified. It follows that any error that may have been inherent in her testimony was harmless beyond a reasonable doubt. *See generally Harrington v. California* (1969) 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; *Chapman v. California* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

For the foregoing reasons, the order appealed from is affirmed.[8]

---

8. Nothing said in this opinion would preclude a different result on similar facts should they be presented upon an appeal from a federal conviction, where we would have responsibility for maintaining standards of prosecutorial conduct. *See, e. g., United States v. Toscanino* (2d Cir. 1974) 500 F.2d 267, 276; *United States v. Freeman* (2d Cir. 1966) 357 F.2d 606, 614. In the Riordan situation we would be concerned with the fact that assistance of counsel was not provided although it was readily available. With regard to Mrs. Arrington, we might well conclude that a prosecutor who persisted in improper procedures in the face of express and articulate objections should be precluded from claiming harmless error.

With respect to the Riordan testimony we further note that the stolen car charges and the robbery charges were not so integrally related that the prosecutor should reasonably have been expected to charge Boyd with both crimes on August 10. In fact, Fitzgerald testified that he believed there would not have been probable cause to arrest Boyd on the robbery charges had Mrs. Riordan failed to provide a positive identification. Thus, we are not called upon to decide what the constitutional consequences would have been had the prosecutor been subject to such a reasonable expectation.