UNITED STATES of America,

v.

**Joseph Peter DORAN, Defendant.**

**No. 85 CR 131.**

United States District Court,
E.D. New York.

July 30, 1985.

Raymond J. Dearie, U.S. Atty. by John J. Gallagher, Brooklyn, N.Y., for the U.S.

Caesar D. Cirigliano, The Legal Aid Society-Federal Defenders Services Unit by John L. Pacht, Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Defendant is charged with two counts of robbery of a Post Office in violation of 18 U.S.C. § 2114. He has moved to suppress (a) an out-of-court identification made in the course of a lineup and photographic display, and (b) his pre-arrest statements. For the reasons set forth below, the motion to suppress the identification is denied and the motion to suppress the statements is granted.

### Facts

In the summer and fall of 1984 two Post Offices in Queens were robbed. On November 5, 1984, postal inspectors showed a photographic spread containing photographs of six white males, including defendant Doran, to two postal clerks who had been robbed (Tr. 4–6). One of the clerks, Mr. Mulligan, indicated that Doran "looked like" the man who had robbed him on October 2, 1984 (Tr. 8, 19). The second clerk, Mr. Grammatico, who had been robbed on August 31, 1984, was unable to identify any of the men in the photographic array (Tr. 13).

On November 20, 1984, defendant Doran, who by then was in state custody on unrelated charges, was brought into this District to be placed in a lineup (Tr. 40, 51). When he was placed in the postal inspector's car, Doran was read his *Miranda* warnings by Postal Inspector Nater (Tr. 41).

Doran was then transported to the General Post Office in Manhattan (Tr. 43). Upon arrival at the Post Office, Doran was again advised of his rights, and was asked to sign a standard "waiver of rights" form (Tr. 46).

Doran expressed some concern about signing the waiver form and wondered aloud whether he should wait for an attorney (Tr. 46–47, 59). Inspector Nater testified that Doran "didn't quite understand if he was required to sign [the form] because he felt that an attorney should be present." (Tr. 46).

After a bit of soul-searching, Doran concluded: "I didn't do anything and besides I am not intending to answer any questions anyway . . ., don't bother with the attorney right now." Accordingly, he signed the waiver of rights form containing a provision indicating he was willing to speak (Tr. 65–68).

Thereafter, Inspector Nater asked Doran several questions about personal history, and he learned, among other things, that Doran was a drug addict (Tr. 68–69). After the personal history was completed, Nater and Doran informally discussed such subjects as the effect of Doran's potential cooperation with the authorities, and the maximum penalty he faced (Tr. 71–72). During this conversation, Inspector Nater told Doran that the agents had a "reasonable belief" that he was involved in the postal robberies. Nater testified that Doran appeared very nervous during the interview and was "shaking quite a bit" (Tr. 62).

At the conclusion of this informal "discussion," a lineup was conducted, consisting of seven white males, including Doran, all wearing blue sweatshirts with hoods (Tr. 92). Postal Clerk Mulligan, who had previously picked Doran out of the photographic array, again identified Doran at the lineup. Postal Clerk Grammatico, who had been unable to identify anyone in the photographic array, identified an individual other than Doran at the lineup (Tr. 95, 110).

Following the lineup, Doran was informed that he had been identified (Tr. 78). Accordingly, Doran and Inspector Nater renewed their conversation regarding cooperation, during which Doran again stated that he "really should have an attorney present" (Tr. 49, 79). Inspector Nater testified that he summoned Inspector Washington because it was unclear whether Doran wanted an attorney (Tr. 49).

Inspector Washington, who had known for a couple of weeks that Doran was a drug addict, began to talk to Doran about cooperation (Tr. 50, 108). In the course of this discussion, Doran asked, "if I cooperate, would I need an attorney?" Inspector Washington then asked, "Do you want one?" Doran replied, "No." (Tr. 108).

Thereafter, Doran confessed to both robberies (Tr. 83, 108). He was subsequently transported back to the United States Marshals, who returned him to state custody. On March 6, 1985, he was indicted for his participation in the two robberies.

## Discussion
### Suppression of Identifications

1. Right to Counsel

Defendant claims that his Sixth Amendment right to counsel was violated when a pre-indictment lineup was held without an attorney present. I disagree.

The Supreme Court has made clear that the right to counsel attaches only to identifications conducted "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charges, preliminary hearing, indictment, information or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 689–90, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). Thus, in *Kirby,* the Court refused to extend the right to counsel to a stationhouse identification conduct-

ed shortly after arrest, but before formal judicial criminal proceedings were initiated. The Court concluded that a defendant is adequately protected in such situations by the Due Process Clause, which forbids pretrial identification procedures that are unnecessarily suggestive and conducive to irreparable mistaken identification. *Id.* at 691–92, 92 S.Ct. at 1883.[1]

■ Doran claims, however, that his right to counsel had attached before the lineup because he was then in state custody on an unrelated charge for which he was represented by counsel. So expansive a view of the Sixth Amendment has already been rejected by the Second Circuit. *Boyd v. Henderson*, 555 F.2d 56, 61 (2d Cir.), *cert. denied*, 434 U.S. 927, 98 S.Ct. 410, 54 L.Ed.2d 286 (1977). In *Boyd*, the Second Circuit observed that "nothing in the language of [the Supreme Court's] opinions leads us to conclude that the Court would have deemed it relevant that the suspect was represented by counsel in connection with some other crime." 555 F.2d at 61. *Cf. United States v. Tyler*, 592 F.2d 261, 263 (5th Cir.1979); *Jackson v. Jago*, 556 F.2d 807, 808 (6th Cir.), *cert. denied*, 434 U.S. 940, 98 S.Ct. 433, 54 L.Ed.2d 300 (1977).

Accordingly, defendant's Sixth Amendment claim is denied.

2. Due Process

Defendant also attacks the lineup and photographic array as unnecessarily and impermissibly suggestive. This claim must be evaluated "in light of the totality of [the] surrounding circumstances." *Simmons v. United States*, 390 U.S. 377, 383, 88 S.Ct. 967, 970, 19 L.Ed.2d 1247 (1968).

■ The photo array shown to Mulligan and Grammatico consisted of six photographs, one of which was Doran (Tr. 6). Clearly, an array of six photographs is not impermissibly small. *United States v. Marrero*, 705 F.2d 652, 655 n. 5 (2d Cir. 1983).

Moreover, the photographs used were strikingly similar. Each photograph depicted a white male with light-colored hair (Tr. 6). Any minor differences that exist "would hardly suggest to an identifying witness that [Doran] was more likely to be the culprit." *United States v. Archibald*, 734 F.2d 938, 940 (2d Cir.1984).

■ Finally, the postal inspector who administered the photo array did nothing to render the procedure unduly suggestive. The inspector did not direct the clerks' attention to any particular photograph; in fact, no suggestion was made that the suspect's picture was among the six photographs (Tr. 7, 9, 13). Nor was Postal Clerk Mulligan told whether he had identified the suspect (Tr. 8).

■ Similarly, the inspectors conducting the subsequent lineup did nothing to focus the witnesses' attention on a particular individual, or pressure them into making an identification. *Dickerson v. Fogg*, 692 F.2d 238, 245 (2d Cir.1982); *Sales v. Harris*, 675 F.2d 532, 538 (2d Cir.1982).

Finally, the record indicates that the six other individuals in the lineup were similar in size and appearance to the defendant. *Solomon v. Smith*, 645 F.2d 1179, 1185 (2d Cir.1981). The six white stand-ins recruited for the lineup all were in their late-20's to mid-30's, clean shaven, and approximately six feet tall. Each man wore a blue hooded sweatshirt (Tr. 92).

In short, upon examining all the circumstances, I conclude that the identification procedures used were not "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to violate due process. *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199

---

1. The Supreme Court has extended the right to counsel to a pre-indictment identification made at a probable cause hearing held *after* defendant's arrest upon a complaint. *Moore v. Illinois*, 434 U.S. 220, 231, 98 S.Ct. 458, 466, 54 L.Ed.2d 424 (1977). In *Moore*, however, the court stressed that "the government ha[d] committed itself to prosecute." *Id.* at 228, 98 S.Ct. at 464. In this case, by contrast, the lineup was held prior to arrest. It cannot be said that the government had committed itself to prosecute Doran at the time of the lineup.

(1967). Accordingly, the defendant's motion to suppress the out-of-court identification is denied.

*Suppression of Statements*

Defendant does not contest that his *Miranda* warnings were properly administered. He moves to suppress his subsequent statements, however, contending that they were obtained in violation of both his Fifth and Sixth Amendment rights to counsel.

Clearly, as discussed above, defendant's Sixth Amendment right to counsel had not attached at the time of the interrogation since defendant had not been indicted, nor had adversary proceedings otherwise begun. *Edwards v. Arizona*, 451 U.S. 477, 481 n. 7, 101 S.Ct. 1880, 1883 n. 7, 68 L.Ed.2d 378 (1981); *United States v. Duvall*, 537 F.2d 15, 23 (2d Cir.), *cert. denied*, 426 U.S. 950, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976).

The Supreme Court has declared, however, that an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation. *Edward*, 451 U.S. at 482, 101 S.Ct. at 1883. If the defendant "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Miranda v. Arizona*, 384 U.S. 436, 474, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966).

A defendant may, of course, waive his right to have an attorney present during custodial interrogation. The government, however, bears the "heavy burden" of proving that a defendant's waiver was knowingly, voluntarily and intelligently made. *Miranda, supra,* 384 U.S. at 475, 86 S.Ct. at 1628. This determination must be based upon an examination of the totality of the circumstances surrounding the interrogation. *Fare v. Michael C.*, 442 U.S. 707, 724–25, 99 S.Ct. 2560, 2571, 61 L.Ed.2d 197 (1979). As the Supreme Court has noted:

> An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver.

*North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979).

Here, defendant's act of signing the waiver of rights form was accompanied by his statements that he had no intention of speaking without an attorney present. Even after signing the waiver form, he repeatedly expressed his hesitancy to speak without a lawyer present. Indeed, Inspector Nater conceded that the idea of having an attorney present during questioning was brought up "so many times" (Tr. 88).

Finally, and significantly, both Inspector Nater and Inspector Washington were aware that defendant is a drug addict. Moreover, Inspector Nater testified that defendant appeared nervous and confused throughout the questioning.

■ Viewing the circumstances in their entirety, I conclude that the government has not sustained its heavy burden of proving that defendant knowingly and voluntarily waived his right to have counsel present during the interrogation. Accordingly, defendant's motion to suppress his statements made at the General Post Office is granted.

SO ORDERED.