Thomas KING, Petitioner,

v.

Charles GREINER, Superintendent
Green Haven Correctional
Facility, Respondent.

No. 00–CV–6391(NG).

United States District Court,
E.D. New York.

July 16, 2002.

Thomas King, New York City, pro se.

Adam S. Charnoff, Assistant District Attorney, Office of the District Attorney, Kings County, Brooklyn, NY, for respondent.

## ORDER

GERSHON, District Judge.

*Pro se* petitioner was convicted after a jury trial on February 18, 1997 in the New York Supreme Court, Kings County (Vaughan, J.), of Assault in the First Degree in violation of N.Y. Penal Law § 120.10[1], Robbery in the First Degree in violation of N.Y. Penal Law § 160.15[2], Attempted Robbery in the First Degree in violation of N.Y. Penal Law

§§ 110.00/160.15[2], and Attempted Assault in the First Degree in violation of N.Y. Penal Law §§ 110.00/120.10[1]. Petitioner was sentenced to concurrent prison terms of twenty-five years to life on the attempted robbery count and six years to life on the attempted assault count stemming from the robbery of Khayyam Jackson, to run consecutively to concurrent prison terms of twenty-five years to life on the robbery count and eight years to life on the assault count stemming from the robbery of Emmanuel Ansah.

Petitioner appealed the judgment of conviction to the Appellate Division, Second Department, arguing that the prosecutor engaged in misconduct on summation, that the trial court erroneously admitted evidence of a pretrial lineup in violation of petitioner's right to have counsel present at the lineup, and that the trial court improperly ordered an independent-source hearing prior to ruling on the admissibility of the lineup identification procedure. On March 29, 1999, the Appellate Division affirmed the conviction. *People v. King*, 259 A.D.2d 763, 688 N.Y.S.2d 173 (2d Dept. 1999). Petitioner sought leave to appeal to the Court of Appeals, which was denied on May 26, 1999. *People v. King*, 93 N.Y.2d 926, 693 N.Y.S.2d 509, 715 N.E.2d 512 (1999). On August 19, 1999, the Court of Appeals denied petitioner's motion for reconsideration. *People v. King*, 93 N.Y.2d 1021, 697 N.Y.S.2d 580, 719 N.E.2d 941 (1999).

On July 20, 1999, petitioner sought a writ of error *coram nobis*, claiming that he was denied effective assistance of appellate counsel. Specifically, petitioner claimed that appellate counsel was ineffective for failing to raise claims that the trial court erroneously denied his pretrial severance motion, that there were erroneous evidentiary rulings, that the People violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), that the evidence was insufficient to support his conviction, that the trial court violated *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and that his sentence was excessive. Petitioner also claimed that his counsel was ineffective for failing to marshal all the facts in support of his claim that the admission of lineup evidence at trial was not harmless. On November 8, 1999, the Appellate Division denied petitioner's motion for a writ of error *coram nobis*. *People v. King*, 266 A.D.2d 315, 698 N.Y.S.2d 526 (2d Dept.1999).

Petitioner now seeks a writ of habeas corpus. He alleges that the prosecutor engaged in misconduct on summation, that the admission of a pretrial lineup violated his right to counsel, that the trial court erroneously held an independent source hearing prior to ruling on the admissibility of a pretrial lineup, that the trial court erred in denying petitioner's pretrial severance motion, that there were erroneous evidentiary rulings, that the People violated *Brady* and *Rosario*, and that his appellate counsel was ineffective. For the following reasons, the petition is denied.

## FACTS

The evidence at trial established that, in the early morning of August 29, 1995, petitioner approached the automobile of Khayyam Jackson, which was stopped at a traffic light, drew a gun, and attempted to steal the automobile. As Jackson sped away, petitioner fired a bullet into the automobile, which grazed Jackson's head. The evidence also established that, in the early morning of September 20, 1995, several blocks away, petitioner entered the automobile of Emmanuel Ansah and attempted to steal the automobile. In the

course of the robbery, he shot Ansah, injuring his thigh and finger.

## ANALYSIS

### 1. Prosecutor's Summation:

Federal habeas corpus relief is available based on a claim of prosecutorial misconduct if the improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). For a writ of habeas corpus to issue, a petitioner must show that the prosecutor's misconduct "had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir.1994), *cert. denied*, 516 U.S. 1152, 116 S.Ct. 1029, 134 L.Ed.2d 107 (1996).

■ At the end of summation, the prosecutor stated that "[t]here is no coincidence, ladies and gentlemen, that both of these victims who were attacked within blocks of each other, blocks from the defendant's residence, picked out the same man." Generally, evidence that a defendant engaged in other criminal activity is not admissible to prove that the defendant committed the charged offense. However, in this case, the prosecutor properly commented on the evidence of other criminal activity because the evidence was probative of the perpetrator's identity. The crimes were committed several weeks apart, within several blocks of each other, and under similar conditions. The perpetrator attempted to rob males early in the morning as each sat alone in his automobile, and he shot at both men as they attempted to flee. Further, the prosecutor's comments were a fair response to defense counsel's challenge to the accuracy of the witnesses' identifications.

Moreover, even if this comment was improper, it did not so infect the trial with unfairness as to make the resulting conviction a denial of due process. Three times during jury selection, the trial judge instructed the jury that they were to consider each charged crime separately and that the fact petitioner was charged with one crime is not proof that he committed another crime charged in the indictment. Further, during the final jury charge, the trial judge instructed the jury that:

> The fact that a defendant is charged with one crime constitutes no proof that he committed another crime also charged in a single indictment. Therefore, you are required to separate in your mind the evidence applicable solely to each crime and return a verdict on each crime based solely on the evidence applicable to that crime.

Therefore, the trial judge's instructions cured any prejudice suffered by petitioner.

The claims regarding the remaining comments are unexhausted. However, having reviewed each challenged comment, the claims are denied on the merits, notwithstanding petitioner's failure to exhaust the claims, because the comments were fair comment on the evidence or fair response to defense counsel's arguments. *See* 28 U.S.C. § 2254(b)(2).

### 2. Pretrial Identification and Independent Source Hearing:

■ Petitioner's claim that the trial court erroneously admitted evidence of two pretrial lineups by Jackson and Ansah, that occurred in the absence of counsel, is not a ground for federal habeas corpus relief. There is no federal right to have counsel present at a pretrial identification proceeding, even where, as in this case, the defendant already is represented by counsel in an unrelated matter at the time of the lineup proceeding, so long as there has

not been a formal charge, preliminary hearing, indictment, or information. *Boyd v. Henderson,* 555 F.2d 56, 60–61 (2d Cir.), *cert. denied,* 434 U.S. 927, 98 S.Ct. 410, 54 L.Ed.2d 286 (1977). In this case, it is undisputed that the pretrial identifications occurred prior to any of these events. Petitioner argues that the Appellate Division's determination that the admission of the lineup evidence was harmless, despite the fact that counsel was not present, was unconstitutional. However, since the determination that the lineup should have been excluded because petitioner was not represented by counsel was a matter of state law, whether or not this violation of state law was harmless does not implicate a federal right.

Noting that state law was unsettled as to whether a defendant who already was represented by an attorney in an unrelated matter had a right to have counsel present at a pretrial identification proceeding, the trial court held an independent source hearing before ruling on the admissibility of the pretrial identification. The trial court stated:

> at least at this point from reading the cases, that whatever decision I make, I could be wrong, and if I were to decide in the District Attorney's favor and we didn't have an independent source hearing, there would be a problem later on appeal, and I just want to do that so that—to eliminate that problem.

Petitioner argues that holding an independent source hearing under these circumstances deprived him of a fair trial. However, petitioner has failed to show how this hearing deprived him of a fair trial. On the contrary, holding an independent source hearing when the admissibility of the pretrial identification proceeding was uncertain was a wise use of judicial resources and violated no federal right.

Likewise, petitioner's claim that the trial court unfairly tainted the independent source hearing lacks merit. At the independent source hearing, in an attempt to produce a misidentification, defense counsel waived petitioner's presence at the hearing and had co-counsel, Leighton Jackson, sit in his place. Defense counsel requested that the court not inform eyewitness Ansah of petitioner's absence because he wished to test Ansah's ability to make an identification. However, since co-counsel covered his face for most of the hearing, when defense counsel asked Ansah whether he observed the perpetrator in the courtroom, the trial judge said, "Mr. Jackson you have had your hands in front of, totally in front of your face almost during the entire hearing. Do you mind putting your hands down. Thank you."

Petitioner argues that this tainted the independent source hearing because the eyewitness knew that the perpetrator's name was not Jackson. However, this statement did not lead to a very substantial likelihood of irreparable misidentification, *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Kennaugh v. Miller,* 289 F.3d 36, 43 (2d Cir. 2002), because Ansah already had identified petitioner in a lineup that was not tainted under the federal constitution; the Judge's statement did not suggest that petitioner was the perpetrator; at most it suggested that the man sitting at the table was not the perpetrator; and Ansah testified that the Judge's comment did not influence his testimony. Further, any prejudice suffered was the result of defense counsel's attempt to conceal his face. The court properly instructed Leighton Jackson to lower his hands so that Ansah could make an accurate identification, and it was reasonable for the Judge to identify to whom he was speaking.

### 3. Pretrial Severance Motion, Erroneous Evidentiary Rulings, and Brady Claims:

Petitioner's claims as to severance, erroneous evidentiary rulings, and a *Brady* violation are unexhausted and now procedurally barred. An application for habeas corpus relief shall not be granted if a petitioner has failed to exhaust his state court remedies, unless there is an absence of state corrective procedures or circumstances exist that render such process ineffective. 28 U.S.C. § 2254(b)(1). In this case, petitioner failed to present his severance motion, erroneous evidentiary rulings, and *Brady* claims to the Appellate Division or the Court of Appeals on direct appeal. Therefore, the claims are unexhausted and are now procedurally barred. Petitioner cannot exhaust these claims by seeking leave to appeal these claims to the Court of Appeals because he has already made the one request for leave to appeal to which he is entitled. *Grey,* 933 F.2d at 120. Further, he cannot obtain collateral review because these claims could have been raised on direct appeal. *See id.* Therefore, petitioner's severance motion, erroneous evidentiary rulings, and *Batson* claims are procedurally barred, unless petitioner can establish cause to excuse the default and prejudice, or actual innocence. *Aparicio v. Artuz,* 269 F.3d 78, 90–93 (2d Cir.2001); *Jones v. Stinson,* 229 F.3d 112, 118–19 (2d Cir.2000).

■ Petitioner argues that ineffective assistance of counsel constitutes cause and prejudice for his default of these claims. Ineffective assistance of appellate counsel, if established, can constitute "cause" excusing the procedural default, *see Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000), but "[a]ttorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial." *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). As discussed below, petitioner has failed to show that his appellate counsel was ineffective for failing to raise these claims. Therefore, he has not shown cause and prejudice for his procedural default.

### 4. Effective Assistance of Appellate Counsel:

■ In order to prevail on an ineffective assistance of counsel claim, a petitioner must show both that counsel's performance fell below the objective standards of reasonableness dictated by prevailing professional norms and that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *Strickland v. Washington,* 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Strickland* standard applies to appellate as well as to trial counsel. *Mayo v. Henderson,* 13 F.3d 528 (2d Cir.1994), *cert. denied,* 513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994). On appeal, counsel is not required to argue every non-frivolous issue; rather, the better strategy may be to focus on a few more promising issues so as not to dilute the stronger arguments with a multitude of claims. *Jones v. Barnes,* 463 U.S. 745, 751–53, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Reviewing courts should not second-guess the reasonable decisions of appellate counsel to press certain issues instead of others; inadequate performance is established only if counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker. *Id.* at 754, 103 S.Ct. 3308; *Mayo,* 13 F.3d at 533. In the appellate context, the prejudice prong of *Strickland* requires a showing of a reasonable probability that the unraised claim would have been suc-

cessful before the state's highest court. *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir.1992), *cert. denied* 508 U.S. 912, 113 S.Ct. 2347, 124 L.Ed.2d 256 (1993). A "reasonable probability" in this context is one that undermines confidence in the outcome of the proceeding. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. In addition, since this petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which mandates deference to state court decisions, petitioner must show that the state court decision denying relief was contrary to, or involved an objectively unreasonable application of, clearly established federal law, as determined by the Supreme Court in order to prevail on either of his ineffective assistance of counsel claims. *Sellan v. Kuhlman*, 261 F.3d 303, 308–14 (2d Cir.2001); 28 U.S.C. § 2254(d)(1).

Petitioner claims his appellate counsel was ineffective for failing to argue that the trial court erred in denying his motion to sever the counts involving the two victims. However, there is no reasonable probability that this claim would have been successful because the charged offenses relating to Ansah and Jackson were joinable under New York law as being predicated on the same or similar statutory provisions, New York Criminal Procedure Law ("C.P.L.") § 200.20(2)(c), and, as discussed above, the robberies were of such a nature that proof of one was admissible as evidence-in chief upon the trial of the other. C.P.L. § 200.20(2)(b); *People v. Mack*, 235 A.D.2d 548, 549, 653 N.Y.S.2d 933, *lv. denied*, 90 N.Y.2d 860, 661 N.Y.S.2d 187, 683 N.E.2d 1061 (1997). Under C.P.L. § 200.20(3), the trial court, "in its discretion," may sever counts joined under Section 200.20(c) "for good cause," but there is no reasonable probability that the Appellate Division would have overturned the trial court's exercise of its discretion in this case.

Likewise, petitioner's claim that his appellate counsel was ineffective for failing to challenge evidentiary rulings lacks merit because this claim is significantly weaker than the claims actually raised and there is not a reasonable probability that this claim would have been successful. Petitioner claims his appellate counsel should have raised challenges to two evidentiary rulings made during the trial. The first is the trial court's ruling precluding defense counsel from questioning Ansah about whether petitioner was naturally bald. This claim was unpreserved since defense counsel did not object to the preclusion, and the ruling was proper since there was no good faith basis for asking Ansah if he knew whether petitioner was naturally bald. The trial court also precluded defense counsel from questioning Ansah about whether he could see without his glasses. This ruling was within the court's discretion because Ansah testified that his glasses were only off for a moment and that he observed the perpetrator for five to six minutes with his glasses on. Petitioner also claims his appellate counsel should have challenged rulings made during defense counsel's summation. The court sustained objections to defense counsel's statements that "[w]ell, we know the light changes every thirty seconds," and that Jackson was in a hurry to get home "[s]o he [could] get up and go to work." However, these rulings were proper because the comments were not based on evidence in the record. Further, the trial court's sustaining of an objection to defense counsel's question to the jury whether they would like to have seen the photographs Ansah selected as resembling petitioner was proper because the question improperly suggested that the prosecution had withheld evidence.

▮ Petitioner next claims that his appellate counsel was ineffective for failing to

raise a claim that the government violated *Brady* and *Rosario* by failing to turn over police reports indicating that four victims of different carjackings did not positively identify petitioner as the perpetrator. Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. 1194. In order to be material, there must be a showing that the suppressed evidence might have affected the outcome of the trial. *United States v. Agurs*, 427 U.S. 97, 104, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). In this case, that four victims of *different* carjackings did not positively identify petitioner as the perpetrator of those crimes is immaterial to whether petitioner was guilty of the carjackings for which he was charged. Therefore, failure to disclose evidence of police reports regarding these identifications did not violate *Brady*.

Likewise, petitioner has not shown a violation of *Rosario*, which requires a prosecutor to disclose prior written or recorded statements of a prosecution witness in its possession that relate to the subject matter of the witness's testimony. *People v. Banch*, 80 N.Y.2d 610, 615, 593 N.Y.S.2d 491, 608 N.E.2d 1069 (1992). None of the four other victims testified, and the reports, which were prepared by Detective Manno, do not relate to the subject matter of Detective Manno's testimony, which was the admissibility of the lineups from which Ansah and Jackson identified petitioner. Moreover, the Appellate Division has determined that the evidence of the pretrial identifications should have been suppressed, but that the failure to suppress the pretrial identifications was harmless because the in-court identification was supported by an independent source. Therefore, even if petitioner prevailed at the suppression hearing, it would not have changed the outcome of the case.

Nor was the failure to preserve the five photographs that Ansah chose as resembling the perpetrator a violation of *Brady* or *Rosario*. These photographs were not evidence favorable to the defendant under *Brady* because Ansah did not identify the men in the photographs as the perpetrator; he merely said that they resembled the perpetrator. Further, the photographs were not *Rosario* material because they were not statements by a prosecution witness.

Third, petitioner argues that his appellate counsel was ineffective for failing to argue "more forcefully" that the violation of his right under New York law to counsel at the pretrial identification proceedings was not harmless. The Appellate Division held that admission of the pretrial identification evidence and the in-court identification was harmless because each of the witnesses had an independent source to support his in-court identification, the testimony was not tainted by any suggestive pretrial identification procedure, and the identification testimony was strong.

■ Petitioner claims his appellate counsel should have argued more forcefully that the identification testimony was not strong. However, the additional arguments that petitioner now claims his attorney should have made are significantly weaker than the arguments his appellate counsel actually raised, and they do not suggest that the identifications were unreliable. Appellate counsel argued that the identifications did not occur until three months after the crimes, that Ansah's pretrial identification was initially equivocal, that Ansah had told the police that between one and five photographs "looked like the man who robbed me," and that a police complaint report indicated that the

eyewitness could not identify the perpetrator at the time of the incident.

Petitioner claims that his appellate counsel should have argued that Jackson's testimony was unreliable because he only observed the perpetrator for a couple of seconds after he drew a firearm, and he claims that the perpetrator grabbed his gun with his right hand, while petitioner is left-handed. However, Jackson testified that he observed petitioner for a total of five minutes because, since the perpetrator looked suspicious, Jackson was watching him as he walked down the street prior to his drawing a firearm. Further, the only evidence that petitioner is left-handed is a stipulation that a witness has seen petitioner write with his left hand on several occasions. Petitioner also claims appellate counsel should have argued that Ansah's glasses had fallen off during the incident, but Ansah testified that his glasses were off only momentarily and he was able to observe the perpetrator up-close for five to six minutes. Finally, petitioner claims his appellate counsel should have pointed out inconsistencies between Ansah's description of the perpetrator and other evidence. None of these arguments would have negated the fundamental facts found by the trial judge which established an independent source. In sum, appellate counsel's performance did not fall below an objective standard of reasonableness and there is not a reasonable probability that the outcome would have been different had these arguments been raised.

■ Similarly, petitioner's claim that his appellate counsel was ineffective for failing to raise a claim that there was insufficient evidence to support his conviction because the identifications by Jackson and Ansah were unreliable lacks merit. The reliability of eyewitness identification testimony is usually an issue for jury determination, unless the degree of unreliability leads to "a very substantial likelihood of irreparable misidentification." *Kennaugh*, 289 F.3d at 43. In this case, there is no reasonable probability that the state court would have found a very substantial likelihood of irreparable misidentification. Jackson testified that he observed the perpetrator and another man while he was waiting at a traffic light as they walked towards him for about five to six car-lengths. He said that there were three lights illuminating the corner, and he had an unobstructed view of the men. After one of the men, whom Jackson identified as petitioner, walked passed Jackson's automobile, he pivoted back around when he was approximately six to eight feet from Jackson, drew a gun, and commanded Jackson to get out of the automobile. Jackson testified that he ducked and drove off. He heard shots being fired and felt blood coming out of his forehead. Jackson testified that he observed the perpetrator for a total of five minutes.

Ansah testified that he observed the perpetrator, whom he identified as petitioner, in daylight as he stood about three feet away from him. Ansah was in the driver's seat, while the perpetrator stood next to the driver's side of the automobile. Ansah testified that the perpetrator was very close to him because the barrel of the hand gun the perpetrator was holding was against Ansah's head. The perpetrator then got closer to Ansah because Ansah struggled with the perpetrator. During the struggle, the perpetrator got close enough to Ansah to bite his arm. Eventually, the perpetrator dropped the gun, and Ansah was able to run, but when Ansah was approximately four to five feet from the perpetrator, he shot at Ansah. In total, Ansah observed the perpetrator for five to six minutes.

Petitioner's arguments as to why the identifications at trial were unreliable lack

merit. While Ansah initially said that he was not sure that petitioner was the perpetrator when he picked him out of a pretrial lineup, petitioner thereafter reassured the police that he was positive that petitioner was the perpetrator. Further, contrary to petitioner's claim that Ansah identified one to five other people in photo-books as the perpetrator, Ansah merely stated that the other individuals resembled the perpetrator. Finally, the fact that a Police Officer Kevin Serpico checked a box in a report completed shortly after the incident which indicated that Ansah could not identify the perpetrator does not render the identification unreliable because, as Officer Serpico testified, the report merely indicated that Ansah was not familiar with the perpetrator at the time of the incident. For the reasons discussed above, petitioner's remaining arguments lack merit.

 Fifth, petitioner claims that his appellate counsel was ineffective for failing to raise a claim that the trial court violated *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in denying his challenge to the prosecutor's exercise of two peremptory strikes against African–American jurors. *Batson* establishes a three step process to determine if a peremptory challenge is racially discriminatory. First, the opponent to a challenge must make out a prima facie case of discrimination. Then the burden shifts to the proponent of the strike to offer a neutral explanation for the challenge. At this stage, the only requirement is that the explanation be neutral on its face. *See Purkett v. Elem,* 514 U.S. 765, 767–68, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). It is "not until the third step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Id.* Under the

third step, "the decisive question will be whether counsel's race-neutral explanation for the peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge." *Hernandez v. New York,* 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

In this case, the trial judge properly applied these three steps. Under the first step, the trial court found that defense counsel had established a prima facie case of discrimination because the prosecution exercised peremptory challenges against either two or three African–American venirepeople in the first round (the race of one was disputed), and three African–American venirepeople in the second round. Thus, the trial judge required the prosecutor to offer a neutral explanation for his peremptory strike of Juror Number One and Juror Number Two. The prosecutor explained as follows:

> I excluded Number One because she had difficulty saying she could convict based on one witness. She hesitated. She also hesitated in the beginning stating whether or not she could be fair.
>
> As I was asking her those questions, [Number Two] nodded her head and she said she would maybe listen but she would rather have two or three reasons before she could convict.

The trial judge then permitted defense counsel an opportunity to respond. *See Jordan v. Lefevre,* 206 F.3d 196 (2d Cir. 2000). Defense counsel argued that the two jurors ultimately indicated that they could be fair. Finally, under the third step, the trial court ruled on the credibility of the prosecutor's explanation for his peremptory strike, stating that defense counsel has "not met [his] burden as far as Step Three is concerned. [The prosecutor] gave me race neutral reasons for both

One and Two." *Barnes v. Anderson,* 202 F.3d 150 (2d Cir.1999).

There is not a reasonable probability that the Appellate Division would have found that the trial judge erred in finding that the prosecutor's proffered reason was not a pretext for racial discrimination. The transcript reflects the hesitancy of Juror One and Juror Two to be fair and convict based on one credible witness. During voir dire, the following exchange took place:

[PROSECUTOR]: What I am going to tell your right now is that with each incident there is only one victim, and there was no one else around at the time. And there is going to be one person who is going to come in here and identify the defendant as the person responsible for committing the crime, one eyewitness. That is all there was.

I need to know if you have any reason why you feel moral, religious, ethical, anything where you feel one witness in not enough, that you would have to hear from more than one witness.

THE JURY PANEL: (No response.)

[PROSECUTOR]: Ms. Lawrence, if I prove the defendant's guilt beyond a reasonable doubt, can you be convinced based upon the testimony of one witness?

[DEFENSE COUNSEL]: That is a tricky question.

THE COURT: Do you understand the question?

[DEFENSE COUNSEL]: Yes, I understand the question.

[PROSECUTOR]: You would have a hard time?

PROSPECTIVE JUROR NUMBER ONE: (No response.)

[PROSECUTOR]: Assuming the witness—you find the witness to be credible, his story makes sense.

The bottom line is some people say, you know what, one person can't do it. But if the person is credible, and you believe the story, and you think his identification is reliable, can you find the defendant guilty on a 1–witness identification?

THE COURT: Listen, there is no law that say you have to prove the case with more than one witness. If the People prove their case with the testimony of one witness beyond a reasonable doubt, and they can do that, the law provides that yes, the verdict would be for the conviction because it is the quality of the testimony that controls, not the quantity of the testimony.

So you may have five witnesses, and you don't believe a word anybody says.

Can you follow that?

PROSPECTIVE JUROR NUMBER ONE: Yes.

[PROSECUTOR]: Do you think you would have a problem with that?

PROSPECTIVE JUROR NUMBER ONE: No.

[PROSECUTOR]: Ms. Roachebrooks, same question.

PROSPECTIVE JUROR NUMBER TWO: Possibility.

[PROSECUTOR]: Possibility of what, having difficulty?

THE COURT: What is that, ma'am?

PROSPECTIVE JUROR NUMBER TWO: I would have to listen to maybe two or three persons.

THE COURT: Let me give you an example. We are not talking about this case. Someone came home, and they walked in their apartment. There is nobody there, and somebody comes out and pulls all the lights on and robs them and spends three and-a-half hours in the apartment with them; okay.

Now how many witnesses are they going to put on?

PROSPECTIVE JUROR NUMBER TWO: One.

THE COURT: So are you telling me that under those circumstances it would be impossible or should be impossible to convict a person because there is only one?

PROSPECTIVE JUROR NUMBER TWO: (No response.)

THE COURT: Do you follow what I am saying?

PROSPECTIVE JUROR NUMBER TWO: Yes.

[PROSECUTOR]: So if you believe the one witness, you could still find the defendant guilty?

PROSPECTIVE JUROR NUMBER TWO: Yes.

[PROSECUTOR]: Are you sure?

PROSPECTIVE JUROR NUMBER TWO: Yes.

---

This hesitancy to convict based on one credible witness was a legitimate reason for striking the jurors, and there is nothing in the record to suggest that the reason was a pretext for discrimination. Therefore, appellate counsel was not ineffective for failing to raise a *Batson* claim.

██ Finally, petitioner claims that his appellate counsel was ineffective for failing to argue that his aggregate sentence of fifty years to life was excessive. However, there is no reasonable probability that this argument would have succeeded. Petitioner was sentenced as a persistent violent offender. As was brought out at sentencing, petitioner pled guilty to felonious attempted weapon-possession in 1981, for which he was sentenced to a term of prison of one to three years. Shortly after being released from prison, petitioner pled guilty to another felony weapon possession

charge in 1982, and was sentenced to a term of imprisonment of two to four years. Within months of his release on parole in 1984, petitioner was arrested for first-degree robbery, to which he pled guilty. He was sentenced as a persistent violent felony offender to a term of imprisonment of ten years to life. Again, within months of his release on lifetime parole in 1996, petitioner was arrested for the current carjacking incidents, during which he shot and injured two individuals on separate occasions. Given this extensive criminal history, and the violent nature of the carjackings, there is no reasonable probability that the Appellate Division would have found his sentence excessive.

In sum, the Appellate Division rejected the claim of ineffective assistance of appellate counsel and, on the record before this court, it cannot be said that this determination was contrary to, or involved an unreasonable application of, clearly established federal law.

## CONCLUSION

The petition for a writ of habeas corpus is denied.

As petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability is denied.

**SO ORDERED.**