**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Stanley Lewis JONES,
Defendant-Appellant.**

No. 78–5365.

United States Court of Appeals,
Fifth Circuit.

June 19, 1980.

---

John Fleming, Atlanta, Ga. (Court-appointed), for defendant-appellant.

William H. McAbee, II, Katherine Henry, Melissa S. Mundell, Michael J. Faulkner, Asst. U. S. Attys., Savannah, Ga., for plaintiff-appellee.

Before GEE, TJOFLAT and ANDERSON, Circuit Judges.

TJOFLAT, Circuit Judge:

Stanley Lewis Jones appeals his conviction for aggravated bank robbery. 18 U.S.C. § 2113(d) (1976). Jones first contends that the evidence was insufficient to take his case to the jury and that the trial court erred in denying his motion for a directed verdict of acquittal. Alternatively, Jones seeks a new trial on the ground that his conviction resulted from evidence

obtained in violation of the fourth amendment. He also questions the trial judge's instructions to the jury and the propriety of his sentence.

As is apparent from the facts we set out in the discussion to follow, the evidence was adequate to authorize submission of this case to the jury; therefore, we reject Jones's first contention. We are convinced, however, that the .22 caliber pistol and bullets received in evidence over Jones's objection were obtained as the result of an unlawful search of his person, and that he is entitled to a new trial. We reverse and remand the case for further proceedings without reaching Jones's remaining claims of error.

## I

On November 4, 1977, the Altama branch of the First Federal Savings & Loan in Brunswick, Georgia, was robbed by a black male, who was described by witnesses as being in his twenties, approximately 5 feet 10 inches tall and 160 pounds, lightskinned, and clean shaven. The robber pointed a gun at one of the tellers and handed her a paper grocery bag in which to put the money. At first the teller thought the robber was kidding. When the robber cocked his pistol, however, and assured her it was no joke, the teller gave him approximately $645. The robber then fled on foot, leaving the grocery bag with the teller.

Approximately five weeks later, on December 12, 1977, Deputy Sheriff Charles Herrington was driving south on Altama Avenue in Brunswick in an unmarked police car, accompanied by Deputy Banks. Neither officer was in uniform. Herrington noticed Jones walking in the same direction, and thought that Jones matched the general description that he had heard over the police radio the day before, of a gas station armed robbery suspect. Herrington tried to make contact with Jones, but Jones crossed the street. When Herrington turned his car around and attempted to pull alongside Jones, Jones again crossed the street, apparently trying to avoid him. This occurred four or five times. Finally,

without identifying himself, Herrington shouted at Jones to stop, whereupon Jones ran into a nearby wooded area. Herrington followed on foot, finally catching Jones after he had fallen. Once Jones was subdued, Herrington asked him why he had run. Jones replied that he knew Herrington was a police officer and wanted no contact with the police.

Herrington restrained Jones in a prone position until other officers arrived at the scene. Jones then was read his *Miranda* rights and was searched. Nine .22 caliber bullets were discovered in his front coat pocket. The officers proceeded to search the vicinity and discovered a .22 caliber automatic pistol approximately twenty steps away. Jones admitted the pistol was his.

Jones was taken to the police station, where he was fingerprinted. After a lineup, the police determined that he was not the gas station robbery suspect. It was soon discovered, however, that his fingerprints resembled those taken from the grocery bag left with the teller during the robbery of the First Federal Savings & Loan. The indictment in this case followed.

Jones moved to suppress the .22 caliber pistol and bullets; the motion was denied, and the Government introduced this evidence at trial. The Government also introduced, in its case-in-chief, Jones's fingerprints taken following his arrest and those from the grocery bag, and the testimonies of a fingerprint expert and three tellers from the savings and loan. The tellers were unable to make a positive identification of Jones as the robber, although they testified that Jones fit the robber's description and that the robber had brandished a gun just like the .22 caliber pistol in evidence. The expert established that some of the prints on the grocery bag, and the only ones that could be identified, belonged to Jones. The jury found Jones guilty of aggravated armed robbery, and the trial judge sentenced him to twenty years imprisonment.

## II

Jones claims that the pistol and bullets, vital to the Government's case, were obtained incident to an illegal arrest and search. The trial court denied his motion to suppress this evidence on two grounds: (1) that the motion was untimely and (2) that the search was incident to an arrest founded on probable cause and, therefore, was lawful. Neither ground has support in the record.

■ Jones waived arraignment and pleaded not guilty on April 5, 1978. His motion to suppress was filed on May 26, 1978. The court ruled that Jones had only ten days from the entry of his plea to file pretrial motions, and that his motion to suppress, presented forty-one days late, was too untimely to be considered.[1]

The record reveals that the first motion filed by either party was the Government's motion for discovery, docketed on May 15. Thereafter, a number of pretrial motions were made by both the prosecution and the defense, including Jones's motion to suppress and the Government's response. A hearing on the motion to suppress was held on June 2, at which time the prosecutor observed that the motion concerned a piece of evidence "crucial" to his case. 2nd Supp. Record on Appeal at 2. It is obvious that the Government was not prejudiced by any delay in the defendant's attack on the admissibility of this evidence. Both parties treated the motion to suppress as timely; they fully argued its merits, and the court determined its merits. Under these circumstances, we think the court abused its discretion in citing untimeliness as one of two grounds for denying the motion.

The Government argues that the alternative ground relied on by the district court—that the search was incident to a lawful seizure—has strong evidentiary support in the record. Deputy Herrington had proba-

ble cause to arrest Jones; at the very least, it is submitted, he had sufficient facts before him to authorize an investigative stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The bullets and pistol, having been uncovered in the course of such a stop were, the argument concludes, properly admitted into evidence.[2] Our examination of the facts known to Deputy Herrington reveals that neither probable cause nor reasonable suspicion was present to justify the stop, arrest, and subsequent search.

■ As we have recounted, the day before Jones's arrest, Herrington heard over his patrol car radio a description of a black male suspected of robbing a gas station. Herrington heard only a part of the description, however, and was not even sure of the particular robbery involved. His impression, from the bulletin, was that the police were looking for a black male, 5 feet 6 inches to 5 feet 9 inches tall and weighing between 150 and 180 pounds, with a medium afro hair style, who was wearing jeans and a long denim jacket. 2nd Supp. Record on Appeal at 5, 16. Jones seemed to fit this general description, so Herrington decided to approach him. Herrington, however, never identified himself as a law enforcement officer before yelling at Jones to stop. This led to the footrace through the wooded area that culminated in Jones's arrest.

■ There was no probable cause to justify Jones's arrest for the offense described in the radio bulletin, and clearly none for the savings and loan robbery cited in the indictment in this case. Nor does the Government point to any other crime for which probable cause to arrest existed. The facts simply were insufficient to warrant a prudent person's belief that Jones had committed any crime. *See Gerstein v.*

---

1. The court cited no authority for the ten-day rule governing the time-period for filing pretrial motions.

2. It should be noted that Jones made no claim, ·before or during trial, that his fingerprints and his admission that he owned the pistol were inadmissible as products of an illegal search.

*Cf. Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (defendant's post-*Miranda* warning statement remained tainted as result of illegal arrest); *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) (fingerprint evidence excluded as fruit of illegal detention).

**498**

*Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854, 861, 43 L.Ed.2d 54 (1975).

■■■ The facts were also insufficient to authorize an investigative stop. For an investigative stop to be lawful, it must have been based on "specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio,* 312 U.S. at 21, 88 S.Ct. at 1880. Herrington acted on the basis of an incomplete and stale description of a suspect that could, plainly, have fit many people. This is not a case where an officer has acted upon timely information of criminal activity. *See United States v. Hall,* 557 F.2d 1114 (5th Cir.), *cert. denied,* 434 U.S. 907, 98 S.Ct. 308, 54 L.Ed.2d 195 (1977) (stop of suspect made within 30 minutes of crime). Jones's evasive actions and flight from two strange men riding in an unmarked car and exhibiting no indicia of lawful authority were only natural reactions to the circumstances. While a person's flight from law enforcement officers may be a fact used to support an officer's reasonable suspicion that criminal activity is afoot, *see, e. g., United States v. Agostino,* 608 F.2d 1035, 1038 (5th Cir. 1979), here Deputy Herrington had no reason to suspect that Jones was consciously trying to evade a law enforcement officer. Jones's comment to Herrington about trying to avoid contact with the police plainly cannot serve as one of the circumstantial facts from which the presence of reasonable suspicion is to be determined. If, in truth, that was Jones's state of mind during the chase that led to his arrest, it was never communicated to Herrington, and Herrington, being in plain clothes and not having identified himself, could not reasonably have concluded that Jones knew that he was being pursued by a policeman. The initial stop was illegal; therefore, Jones's arrest and the search incident to that arrest are constitutionally infirm. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Robinson,* 535 F.2d 881, 883 (5th Cir. 1976).

■■■ The discovery of the bullets during the officers' search naturally caused them

to believe that a gun may have been discarded by Jones during his flight. They then searched the surrounding area for five to ten minutes and found the pistol at the edge of the wooded area just off the path along which Jones had fled. The discovery of the pistol was a product of the illegal search. Its discovery was not "so attenuated as to dissipate the taint," *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 454 (1939); consequently, the pistol, as well as the bullets seized in the search, should have been excluded as an illegal fruit of the *Wong Sun* tree. 371 U.S. at 484; 83 S.Ct. at 416.

■■ The Government contends, however, that Jones lacked standing to challenge the admissibility of the pistol since he abandoned it during his flight. This argument misplaces the proper focus of our analysis. Our concern is not whether Jones abandoned the pistol; it is, instead, whether the discovery of the pistol was brought about by unlawful police conduct. In *Wong Sun,* the Supreme Court ruled that narcotics discovered as the result of information unlawfully obtained from the defendant could not be used as evidence against him, even though the narcotics had been seized, not from the defendant, but from a third party. Whether the defendant had standing to challenge the seizure of narcotics from the third party was irrelevant. Likewise irrelevant was whether the fourth amendment rights of that party had been violated. The question was simply whether "[t]he exclusion of the narcotics as to [the defendant] was required solely by their tainted relationship to information unlawfully obtained from [the defendant] . . . ." *Id.* at 492, 83 S.Ct. at 419. In this case the relationship of the pistol to the illegal search is at least as tainted as were the narcotics that the Court excluded in *Wong Sun.* The pistol, therefore, should have been suppressed.

Because the pistol and the bullets were highly prejudicial to the defendant's case, as the Government must concede, the trial court's error in receiving them in evidence requires reversal. Accordingly, the convic-

tion is reversed and the case is remanded for a new trial.

REVERSED AND REMANDED.