Salvatore LoPIZZO, Petitioner,

v.

Eugene S. LeFEVRE, Superintendent, Franklin Correctional Facility, Respondent.

No. CV 93–5235.

United States District Court, E.D. New York.

Sept. 9, 1994.

---

Salvatore LoPizzo, pro se.

Denis J. Dillon, Nassau County Dist. Atty.
by Lawrence J. Schwarz, Asst. Dist. Atty.,
Mineola, for respondent.

### MEMORANDUM AND ORDER

WEXLER, District Judge.

*Pro se* petitioner Salvatore LoPizzo petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the following grounds: (1) denial of petitioner's alleged constitutional right to counsel in connection with a pre-accusatory instrument lineup, and (2) denial of petitioner's constitutional right to a speedy trial. For the reasons below, the petition is denied.

### I. BACKGROUND

On June 11, 1983, petitioner was arrested in connection with a robbery that took place in Nassau County, New York, on July 16, 1982 (the "Nassau robbery"), and was taken to a Nassau County Police Department ("NCPD") Robbery Squad office. At the Robbery Squad office, Detective John Leonick of the NCPD Robbery Squad ("Detective Leonick") arranged for petitioner to be viewed at a lineup by three witnesses to the robbery. These witnesses arrived at the precinct between 6:30 and 6:45 p.m. that evening. Witnesses to the robbery had pre-

viously identified petitioner in a photo array on May 27, 1983.

In the meantime, at about 5:30 p.m., petitioner telephoned the office of an attorney, Melvin Lebetkin ("Lebetkin"). Lebetkin's secretary told Detective Leonick that Lebetkin was out of town, but the secretary would try to contact him. At approximately 7:40 p.m., petitioner requested that the lineups be postponed until he located Lebetkin. In response, Detective Leonick told petitioner that the police had been trying to contact Lebetkin for over two hours, and would not wait any longer to conduct the lineups. Indeed, as late as 7:20 p.m., Detective Leonick telephoned Lebetkin's office, and the secretary told him she still had not heard from Lebetkin. Detective Leonick asked petitioner if he wanted to call another attorney, but petitioner said "No." When petitioner declined, Detective Leonick told him the lineups would proceed at that point.

Shortly after 7:40 p.m., lineups occurred in connection with the Nassau robbery, and petitioner was identified by all three witnesses. At 7:55 p.m., after the Nassau robbery lineups were completed, Lebetkin telephoned the Robbery Squad office. Lebetkin told Detective Leonick that he represented petitioner and requested postponement of any further lineups. His request was refused, and a lineup was held, without Lebetkin present, in connection with a robbery which occurred in Queens, New York (the "Queens robbery"). Petitioner was identified in connection with that robbery as well.

On June 12, 1983, a felony complaint was filed in connection with the Nassau robbery, and petitioner was arraigned that day. He pleaded not guilty. Petitioner was represented at the arraignment by an attorney from the Nassau County Legal Aid Society. At the arraignment, petitioner's attorney demanded a felony examination, which was then scheduled for June 15, 1983. On June 15, petitioner appeared in court represented by Lebetkin, who requested an adjournment to July 12, 1983 for plea discussion purposes. The adjournment was granted. On July 12,

Lebetkin requested and was granted another adjournment, this time to August 2, 1983. On August 2, Lebetkin was granted another requested adjournment to September 16, 1983. Again, the adjournment was for plea discussion purposes. Thereafter, at the state's request, the matter was adjourned to October 4, 1983. The purpose of this adjournment was for assignment of the case to the county court from the district court for a felony screening conference. Nevertheless, the matter was transferred back to the district court that same day, and adjourned to October 6, 1983. Because Lebetkin was engaged in another court on October 6, an attorney appeared on his behalf and requested a further adjournment, which was granted to October 14, 1983, and then to October 16, 1983. Thereafter, as the trial court found, petitioner refused to appear on October 16, 17 and 21, 1983, prompting further adjournments by Lebetkin to November 3, 1983. On November 3, it was discovered that petitioner had been transferred to a correctional facility in Queens, New York, pursuant to an order concerning the Queens robbery. Because of petitioner's transfer to Queens, the Nassau robbery matter was adjourned to November 23, 1983. However, petitioner was not produced on November 23 because of proceedings in Queens concerning the Queens robbery. The Nassau robbery matter was then adjourned to December 8, 1983. On December 8, petitioner appeared with Lebetkin, who asked to be relieved as petitioner's counsel due to a conflict.[1] The request was granted, and the matter was adjourned to December 12, 1983, to allow time for the Defense Counsel Screening Bureau to determine whether petitioner was entitled to assigned counsel or a Legal Aid attorney. When the screening process was not completed by December 12, the matter was adjourned by the court to December 13, 1983. Thereafter, petitioner was assigned a Legal Aid attorney, and the case was adjourned to December 19, 1983, upon petitioner's demand for a felony examination.

---

1. It appears that, at that point, Lebetkin was representing both petitioner and petitioner's father, Salvatore LoPizzo, Sr., in connection with the Nassau robbery. The request had been made earlier, but the court refused to consider the request in petitioner's absence.

Petitioner was charged in an indictment filed December 16, 1983 in connection with the Nassau robbery. He was arraigned on December 22, 1983, and pleaded not guilty. At the arraignment, petitioner's attorney requested an adjournment, which was granted to February 15, 1984. On January 27, 1984, a second indictment was filed charging petitioner in connection with the Nassau robbery, but as to different victims than the first indictment. On February 15, petitioner was arraigned on the second indictment, and again pleaded not guilty.

Prior to trial of the indictments, petitioner moved to suppress witness identification testimony stemming from the Nassau robbery lineups and to dismiss the indictments for denial of a speedy trial. These motions were ultimately denied. *See New York v. LoPizzo,* Indictment Nos. 58068 & 58300, slip op. (County Ct., Nassau County, Aug. 10, 1984) (Harris, J.); *New York v. LoPizzo,* Indictment Nos. 58068 & 58300, slip op. (County Ct., Nassau County, June 8, 1984) (Lawrence, J.).

Upon trial of the Nassau robbery indictments in October and November 1984, petitioner was convicted of three counts of robbery in the first degree, and sentenced on December 10, 1984 to concurrent indeterminate terms of imprisonment of twelve and a one-half to twenty-five years.

Petitioner appealed his convictions to the Appellate Division, Second Department. That court unanimously affirmed the convictions. *See New York v. LoPizzo,* 151 A.D.2d 614, 543 N.Y.S.2d 88 (2d Dep't 1989). On December 11, 1989, the New York Court of Appeals denied petitioner leave to appeal. *See New York v. LoPizzo,* 75 N.Y.2d 772, 551 N.Y.S.2d 914, 551 N.E.2d 115 (1989).

In the meantime, petitioner pleaded guilty and was convicted of charges in connection with the Queens robbery, following an adverse ruling on a suppression motion concerning the Queens robbery lineup of June 11, 1983. On appeal from that conviction, the Appellate Division held that petitioner's right to counsel was violated when petitioner's attorney was excluded from the lineup after requesting that it be postponed. Accordingly, on May 13, 1991, the Queens conviction

was reversed and the guilty plea vacated on the ground that the erroneous suppression ruling may have contributed to petitioner's decision to plead guilty in that case. *See New York v. LoPizzo,* 173 A.D.2d 562, 570 N.Y.S.2d 307 (2d Dep't 1991).

Following the reversal of the Queens conviction, in October 1991, petitioner moved to reargue his appeal from the Nassau convictions to the Appellate Division. On November 15, 1991, the Appellate Division denied the motion to reargue.

In his habeas petition, petitioner claims he was denied his right to counsel under the Sixth and Fourteenth Amendments in connection with the Nassau robbery lineups, and that he was denied his right to a speedy trial under the Sixth and Fourteenth Amendments for the delay from June 12, 1983, the date the felony complaint was filed, to February 15, 1984, the date petitioner alleges the state answered ready for trial.

## II. *DISCUSSION*

### A. *Right to Counsel*

The Sixth Amendment right to counsel applies to "'critical' stages of the proceedings." *United States v. Wade,* 388 U.S. 218, 224, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967). In *Wade,* the Supreme Court held that a post-indictment pretrial lineup at which the accused is exhibited to identifying witnesses is a "critical" stage of the prosecution, and that police conduct of such a lineup without notice to and in the absence of defendant's counsel violates the Sixth Amendment right to counsel. *Id.* at 228, 87 S.Ct. at 1933. However, in *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the Supreme Court emphasized that the Sixth Amendment right to counsel attaches only "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. *Id.* at 689, 92 S.Ct. at 1882; *see also United States v. Gouveia,* 467 U.S. 180, 187, 104 S.Ct. 2292, 2296, 81 L.Ed.2d 146 (1984) ("[O]ur cases have long recognized that the right to counsel attaches only at or after the initiation of

adversary judicial proceedings against the defendant.").[2] As the *Kirby* Court explained, it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and is immersed in the intricacies of substantive and procedural criminal law. *Kirby*, 406 U.S. at 689, 92 S.Ct. at 1882. The Supreme Court, however, has recognized that there are situations where the right to counsel attaches even though formal prosecution has not begun, but this is when the "process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession." *Escobedo v. Illinois*, 378 U.S. 478, 492, 84 S.Ct. 1758, 1766, 12 L.Ed.2d 977 (1964). Nevertheless, the government may not deliberately delay the filing of an accusatory instrument, thereby depriving the accused of his right to counsel. *Gouveia*, 467 U.S. at 192, 104 S.Ct. at 2299. The Fifth Amendment requires that an indictment be dismissed "if the defendant can prove that the Government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense." *Id.*

▉ Petitioner concedes that the lineups occurred before the filing of the accusatory instrument—the felony complaint. However, he contends that the government's activity prior to the filing of the felony complaint establishes that the government had crossed the line from investigator to adversary. Specifically, he points to the photo array identifications of May 27, 1983 and a subpoena of his telephone records by the government in March 1983. However, these activities amount to normal investigatory procedures, and there is no support in the record for a claim that any acts of the government up to and including the day of his arrest, June 11, 1983, were aimed at petitioner for the purpose of eliciting a confession. Indeed, the trial court found these lineups were investigatory. *See New York v. LoPizzo*, Indictment Nos. 58068 & 58300, slip op. at 3 (County Ct., Nassau County, Aug. 10, 1984) (Harris, J.). Accordingly, this Court finds that petitioner did not possess a Sixth Amendment right to counsel in connection with the Nassau robbery lineups.[3]

## B. *Right to Speedy Trial*

The Sixth Amendment guarantees an accused the right to a speedy trial. *See* U.S. Const. amend. VI. In the petition, petitioner claimed that the state violated his right to a speedy trial pursuant New York Criminal Procedure Law ("CPL") § 30.30. As applicable to petitioner, CPL § 30.30(1)(a) required the state to be ready for trial within six months of commencement of the action. However, as respondent correctly observes in opposition to the petition, a claim of violation of CPL § 30.30(1)(a) is not cognizable in this habeas corpus action. Petitioner then responded by claiming a violation of his Sixth Amendment right to a speedy trial, alleging:

---

**2.** This Court looks to state law to determine when adversary judicial proceedings have been commenced. *See Meadows v. Kuhlmann*, 812 F.2d 72, 76 (2d Cir.), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). In New York, the filing of the accusatory instrument, which includes a felony complaint, commences a state criminal action. *See* N.Y. Crim.Proc. Law § 100.05 (McKinney 1992). Accordingly, adversary judicial proceedings were commenced against petitioner on June 12, 1983, the date the felony complaint was filed.

**3.** Petitioner raises in his reply papers that his Fifth Amendment rights were also violated. Respondent does not address this claim. In any event, there is no merit to this claim since there is no support in the record for a claim that his right against self-incrimination was violated or

---

that the government intentionally delayed filing the accusatory instrument as a deliberated device to gain an advantage over him, causing him actual prejudice. The felony complaint was filed only one day after petitioner was arrested, and there is no basis in the record for a claim that the police attempted to interrogate petitioner or elicit a confession on June 11, 1983. In addition, to the extent petitioner claims he was denied his right to counsel under New York law because he was already represented by Lebetkin and the Nassau robbery lineups, therefore, should have been postponed, *see New York v. Hawkins*, 55 N.Y.2d 474, 450 N.Y.S.2d 159, 166, 435 N.E.2d 376 (1982), *cert. denied*, 459 U.S. 846, 103 S.Ct. 103, 74 L.Ed.2d 93 (1983), such claim is not cognizable in this habeas corpus action.

The petitioner was arrested on 6/11/83, and was not arraigned on the Grand Jury indictment until 12/22/83. The people were not ready on the record until 2/15/84. Well [sic] over the six month [sic] mandated by state and federal law.

Petitioner's Memorandum of Law in Reply to Respondent's Opposition, at 14.

 To the extent petitioner claims that the state violated his Sixth Amendment right to a speedy trial by allegedly violating CPL § 30.30(1)(a), he misconstrues the law. The Sixth Amendment does not mandate a six-month period as does CPL § 30.30(1)(a). In other words, determination of whether petitioner's Sixth Amendment right has been violated does not depend on whether the state's speedy trial statute has been violated. Rather, as the Supreme Court has held, a balancing approach is to be used to determine whether a defendant has been denied a speedy trial under the Sixth Amendment. *See Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). The factors which a court must balance include "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* To the extent petitioner claims that his Sixth Amendment right was violated by the delay from the commencement of the criminal action (*i.e.* June 12, 1983) to the date petitioner alleges the state answered ready for trial (*i.e.*, February 15, 1984),[4] his claim is without merit.[5]

Initially, the Court notes that the length of the delay complained of here, approximately eight months, is not extensive. Indeed, it is far shorter than in cases where the Second Circuit has found that the Sixth Amendment was not violated. *See Flowers v. Warden, Connecticut Correctional Institution,* 853 F.2d 131, 133 (2d Cir.) (citing cases), *cert. denied,* 488 U.S. 995, 109 S.Ct. 563, 102 L.Ed.2d 588 (1988). In any event, the trial court found, after a hearing, that the majority of this delay was attributable to petitioner and his attorney. *See New York v. LoPizzo,* Indictment Nos. 58068 & 58300, slip op. at 4–7 (County Ct., Nassau County, Aug. 10, 1984) (Harris, J.). Most of the adjournments resulted from petitioner's attorney's requests for purpose of engaging in plea discussions, while some delay resulted from petitioner's attorney's request to be relieved as counsel and from petitioner's refusal to appear.[6]

As for whether petitioner was prejudiced by the delay, the Supreme Court in *Barker* explained that prejudice should be assessed in light of the interests the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. If witnesses die or disappear during the delay, the prejudice is obvious. *Id.* There is also prejudice where a defense witness is unable, because of delay, to recall accurately events in the distant past. *Id.* However, memory loss is not always reflected in the record because "what has been forgotten can rarely be shown." *Id.* Here, petitioner's sole argument that he was prejudiced is his conclusory and unsupported allegation that the in-court identifications by witnesses were tainted due to the delay. Petitioner does not claim that he was unable to contact any defense witness because of the delay. Nor does petitioner indicate memory loss of any defense witness that was due to the delay and prejudicial to him.

On balance, because the delay was not extensive and, in any event, most of it was attributable to petitioner and his attorney, and petitioner fails to show prejudice resulting from the delay, petitioner was not denied his Sixth Amendment right to a speedy trial.

---

4. Contrary to petitioner's contention, the trial court found that the state answered ready for trial on December 22, 1983.

5. Petitioner does not complain about the delay from February 15, 1984 to October 1984, when the trial began.

6. The trial court's findings are presumed correct under 28 U.S.C. § 2254(d). Although petitioner denies refusing to appear in court, the trial court found to the contrary. Nevertheless, any delay attributable to a refusal to appear was minimal compared to delay otherwise attributable to petitioner and his attorney.

## CONCLUSION

For the reasons above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.

SO ORDERED.