Woodrow COLLINS, Petitioner,

v.

Charles SCULLY, Superintendent Greenhaven Correctional Facility; Richard Brown, District Attorney, County of Queens; Dennis Vacco, Attorney General of the State of New York, Respondents.

Civ. A. No. 90–CV–0883 (DGT).

United States District Court,
E.D. New York.

March 14, 1995.

Woodrow Collins, pro se.

Tyrone Mark Powell, Asst. Atty. Gen., New York City, for respondents.

TRAGER, District Judge:

On January 26, 1995, Magistrate Judge Michael L. Orenstein issued a Report and Recommendation (Report) in connection with the above-captioned matter in which he determined that the petition for a writ of habeas corpus should be denied in all respects.

Petitioner, Woodrow Collins, filed a "Response to the Report and Recommendation" (Response) on February 6, 1995, in which he raised several objections to the Report. Respondents have not filed any response to the Report or petitioner's Response.

After a *de novo* review of the record, this Court adopts the recommendation contained in Magistrate Judge Orenstein's Report. *See* 28 U.S.C. § 636(b)(1). Accordingly, the petition for a writ of habeas corpus is dismissed. Further, as the petition presents no questions of substance for appellate review, a

certificate of probable cause is denied. *See Rodriguez v. Scully*, 905 F.2d 24 (2d Cir. 1990) (per curiam).

## Background

In September 1983, the New York City Police Department was investigating a string of burglaries in the Kew Gardens Hills section of Queens, New York.[1] All of the burglaries were committed by a team of two men, who had come to be called the "Mutt and Jeff" bandits. In connection with the investigation, the Neighborhood Stabilization Unit was patrolling the area in the early-morning of September 15, 1983. At approximately 12:01 a.m., petitioner and a co-defendant, both of whom fit the description of "Mutt and Jeff", were observed fleeing from a driveway on 72nd Avenue. A short time later, petitioner and the co-defendant were again observed in the same general area. Police attempted to stop petitioner and a chase ensued (T.3344/83 at 194).[2] Petitioner subsequently was caught and taken into custody (T.3304/83 at 58). After being taken to central booking, petitioner and his co-defendant confessed to attempting to burglarize a house that night. Petitioner was arrested for criminal trespass and attempted burglary and charged with these crimes in indictment number 3315/83. *See* Aff.Supp.Pet.'s 1989 Mot.Vac. at 7–8, 9.[3] Following his arrest, petitioner was placed in a lineup in connection with the investigation of the string of burglaries in Kew Gardens Hills. Petitioner was identified by three victims as one of the men who robbed them and burglarized their homes (W.3304/83 at 95; W.3344/83 at 9). Thereafter, petitioner was charged with burglary and robbery in indictment numbers 3304/83 and 3344/83.

Subsequent to his arrest, petitioner was convicted under indictment numbers 3304/83 and 3344/83 in Supreme Court, Queens County on four counts of burglary in the first degree and robbery in the first degree, and one count of assault in the second degree.

1. A more complete recitation of the circumstances surrounding petitioner's arrest can be found in the Report and Recommendation.

2. This Court is following the citation format discussed in the Report at p. 5 n. 2.

3. This indictment was subsequently dismissed. *See* Mem.Supp.Pet. at 3.

Petitioner was sentenced to two consecutive terms of eight and one-third to twenty-five years for the burglary and robbery counts and a concurrent term of two and one-third to seven years for the assault count. Following his convictions, petitioner filed three motions to vacate the judgments pursuant to New York Criminal Procedure Law § 440.10, all of which were denied. Petitioner also appealed his convictions to the Appellate Division, Second Department, and the New York Court of Appeals, both of which were denied. *See People v. Collins*, 136 A.D.2d 720, 523 N.Y.S.2d 1018, *lv. denied*, 71 N.Y.2d 894, 527 N.Y.S.2d 1003, 523 N.E.2d 310 (1988); *People v. Collins*, 136 A.D.2d 722, 523 N.Y.S.2d 1020, *lv. denied*, 71 N.Y.2d 894, 527 N.Y.S.2d 1003, 523 N.E.2d 310 (1988).

Petitioner filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that his convictions were obtained in violation of his rights under the Fourth, Sixth and Fourteenth Amendments to the United States Constitution. Specifically, petitioner argues: (1) his due process rights were violated by the lineup when he was viewed by victims of crimes other than the one for which he was initially arrested; (2) his Fourth Amendment rights were violated as the police lacked probable cause to arrest him because he was "not arrested for a crime that formed the basis for pursuit, but one that was a result of the pursuit"; (3) he was denied the right to a fair trial based on a host of alleged errors at trial; (4) he was denied the right to a speedy trial; (5) he was denied the right to counsel at the lineup; and (6) the Appellate Division

erred in holding the issue of probable cause unpreserved for appellate review. *See* Pet. at 4–6.

## Discussion

In his Response, petitioner raised several objections to Magistrate Judge Orenstein's Report. For the sake of clarity, petitioner's arguments will be discussed in relation to each part of the Report objected to.[4]

### Lineup

Petitioner's first objection is that, contrary to the findings in the Report, his convictions were obtained in reliance on an "illegal" lineup identification while he was "unlawfully" in custody on an unrelated crime, and, therefore, the lineup violated his due process rights.[5] Specifically, petitioner argued that the arresting officer testified at two separate suppression hearings that petitioner had committed no crimes in his presence, nor had done anything that was illegal at that time of his arrest. Objections at 18. In addition, petitioner argued that the descriptions of the suspects for whom the police were looking on the night of September 15 was a composite of descriptions from several crimes committed in the area, none of which related specifically to the crimes for which petitioner was convicted. Therefore, petitioner argued that the police lacked probable cause to arrest him in the first place, let alone to place him in a lineup for the unrelated crimes. Relying on *Santucci v. Andrews*, 117 Misc.2d 616, 458 N.Y.S.2d 1007 (Sup.Ct.1983), petitioner argued that the lineup identifications were, therefore, in violation of his due process rights and his convictions should be reversed.

---

**4.** In the first fifteen pages of his Response to the Magistrate Judge's Report, petitioner raises a host of objections with respect to the Report's "Statement of Facts". *See* Response at 2–15. For example, petitioner claims that defense counsel requested information on two other sets of men who fit the description of "Mutt and Jeff" but the information was never provided to the defense. *Id.* at 3–4. These objections are, in effect, new arguments raised in support of the petition. As these arguments were not pleaded in the original petition, or in the two memoranda of law in support thereof, this Court will not address them further.

**5.** It is important to note that Petitioner misconstrued part of Magistrate Judge Orenstein's Report. In footnote 4, Magistrate Judge Orenstein

stated that petitioner was mislead by respondent's failure to address the argument that petitioner was viewed in a lineup while in custody on an unrelated charge. Respondent argued that the lineup was not unduly suggestive. Petitioner chose to rebut respondent's argument when he had not raised the argument as a ground in his petition. Accordingly, Magistrate Judge Orenstein wrote, "[b]ecause *it* was not raised as a ground in the petition, this Court has not otherwise addressed this argument" (emphasis added). Magistrate Judge Orenstein was referring to the argument that the lineup was not unduly suggestive, not the argument that petitioner was viewed in a lineup while in custody on an unrelated charge.

■ A careful reading of the record belies petitioner's objections. In support of these objections, petitioner cited to the record of two suppression hearings held in connection with indictment numbers 3313/83 and 3315/83. These hearings *were not* part of the proceedings which gave rise to the convictions underlying the present petition (W.3313/83; W.3315/83). As such, the records cited by petitioner are not properly before this Court.

■ Nevertheless, even if this Court were to consider the record of suppression hearings for the unrelated indictments, petitioner's arguments are without merit. At these hearings, the arresting officer testified that petitioner did commit a crime in his presence—criminal trespass (W.3315/83 at 66; W.3313/83 at 27). Petitioner, who fit the description of a suspect in a string of burglaries, was seen engaging in suspicious conduct in the area where the burglaries were committed (T.3344/83 at 194). Upon an initial approach by the police, petitioner fled. Accordingly, under federal law the police were justified in making the initial stop and subsequent arrest, and petitioner was, therefore, in lawful custody at the time he was viewed in the lineup. *See, e.g., Adams v. Williams,* 407 U.S. 143, 148, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972); *United States v. Fisher,* 702 F.2d 372, 375 (2d Cir.1983); *United States v. Harley,* 682 F.2d 398, 402 (2d Cir.

1982). In addition, after being taken into custody for criminal trespass, petitioner confessed to the attempted burglary and was arrested. *See* Aff.Supp.Pet.'s 1989 Mot.Vac. at 19. Further, although the description of the suspects in the string of burglaries and robberies in the area was a composite from a number of crimes, petitioner and his co-defendant fit the descriptions those suspects.[6] Therefore, there was probable cause to investigate petitioner's involvement in the other burglaries and robberies committed in the area and include him in the lineup for those crimes.[7]

■ As Magistrate Judge Orenstein correctly noted in the Report, a person in lawful custody may be placed in a lineup for unrelated crimes of which he is a suspect, and such a procedure is consistent with due process as long as the lineup itself does not violate due process. *See, e.g., United States v. Anderson,* 490 F.2d 785, 788–89 (D.C.Cir. 1974). Here, petitioner was placed in a lineup with five other men of similar complexion, varying heights and dress (W.3344/83 at 46–47). Petitioner was given the opportunity to chose his position and number in the lineup (W.3304/83 at 8; T.3304/83 at 69). Due process does not require that a criminal defendant be viewed in a lineup with other individuals nearly identical in appearance to himself. *See, e.g., United States v. Reid,* 517 F.2d 953, 966 n. 15 (2d Cir.1975).[8] As the

---

**6.** Petitioner mistakenly relies on *United States v. Jones,* 619 F.2d 494 (5th Cir.1980), for the proposition that the use of a composite description is "useless as a factor in establishing" reasonable suspicion. Response at 4. *Jones* does not stand for such a proposition. *See Jones, supra,* 619 F.2d at 494. In addition, the use of composite descriptions to establish reasonable suspicion is a well-established, and proper, police procedure. *See, e.g., United States v. Boston,* 508 F.2d 1171, 1174 (2d Cir.1974), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2401, 44 L.Ed.2d 669 (1975).

**7.** Petitioner incorrectly relies on *Santucci v. Andrews,* 117 Misc.2d 616, 458 N.Y.S.2d 1007 (Sup. Ct.1983), as the basis for federal habeas corpus relief. First, *Andrews* was based on the more restrictive New York Criminal Procedure Law, not the United States Constitution. *Id.* 458 N.Y.S.2d at 1008. *See also Matter of Abe A.,* 56 N.Y.S.2d 288, 452 N.Y.S.2d 6, 437 N.E.2d 265 (1982). Contrary to petitioner's assertion, in habeas corpus cases a federal court cannot review whether a state court correctly applied state pro-

cedural law. *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 479–80, 116 L.Ed.2d 385 (1991). Second, federal courts have consistently held that the United States Constitution does not prohibit the government from placing a lawfully detained defendant in lineups for any crimes of which he is a suspect. *See United States v. Anderson,* 490 F.2d 785, 788–89 (D.C.Cir.1974) (*citing United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); *United States v. Mara,* 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973); *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)). Moreover, even if this Court were to consider the *Andrews* case, as stated earlier, there was probable cause to place petitioner in the lineup for the unrelated crimes, therefore, petitioner's argument is without merit.

**8.** Petitioner claims that the lineup violated his due process rights as he was the only participant with corn-row hair and only one other participant was shorter in height. This claim also is

fill-ins for the lineup were sufficiently similar in appearance to petitioner such that the victims were not oriented toward selecting only him as a participant in the crimes charged, the lineup was not impermissibly suggestive and did not create a substantial likelihood of irreparable misidentification. *See, e.g., Jarrett v. Headley,* 802 F.2d 34, 40 (2d Cir.1986). Accordingly, the lineup in question did not violate petitioner's due process rights (W.3344/83 at 44; W.3304/83 at 117).

 Finally, even if this Court were to find that the lineup was unduly suggestive, the convictions would nevertheless be supported by clearly reliable in-court identifications. *See, e.g., Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *Styers v. Smith,* 659 F.2d 293, 297 (2d Cir.1981). In affirming petitioner's convictions, the Appellate Division explicitly found that the in-court identification of one of the victims—Mrs. Sweder—was based upon an independent recollection rather than the allegedly improper lineup. *See Collins, supra,* 136 A.D.2d at 723, 523 N.Y.S.2d 1020. Mrs. Sweder testified that she viewed petitioner in a well-lit bedroom for 30 to 40 minutes as he rummaged through her dresser drawers (T.3344/83 at 119, 128). A state court's determination that an identification is valid is presumed to be correct. *See Sumner v. Mata,* 449 U.S. 539, 544–47, 101 S.Ct. 764, 767–69, 66 L.Ed.2d 722 (1981). In addition, the other victims who identified petitioner in court—Mr. and Mrs. Zarin—had similar opportunities to view petitioner during the commission of the crimes in question (T.3304/83 at 146–47, 270). Further, all of the victims were cross-examined at length as to the certainty of their identifications. Accordingly, and despite petitioner's objection to the contrary, the in-court identifications were properly found to be reliable. *See United States ex rel. Pella v. Reid,* 527 F.2d 380, 385 (2d

Cir.1975) (*citing Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). *See also United States ex rel. Bisordi v. LaVallee,* 461 F.2d 1020, 1024 (2d Cir.1972).

Petitioner also objects to that part of the Report which rejects the claim that his Sixth Amendment right to counsel was violated by the lineup. Petitioner argues that as he had been given his *Miranda* warnings before the lineup took place, and "no attempt was made to obtain [an] attorney[ ]" for him, his Sixth Amendment right to counsel was violated. Response at 22. This argument also is without merit.

 Again, in support of this objection, petitioner cited to the record of the suppression hearing for indictment number 3315/83. That record is not properly before this Court. Moreover, as Magistrate Judge Orenstein correctly noted, the Sixth Amendment right to counsel attaches as soon as formal adversarial judicial proceedings have commenced. *See, e.g., United States v. Gouveia,* 467 U.S. 180, 188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984); *Claudio v. Scully,* 982 F.2d 798, 802 (2d Cir.1992), *cert. denied,* ── U.S. ──, 113 S.Ct. 2347, 124 L.Ed.2d 256 (1993). Federal courts must look to state law to determine when formal adversarial judicial proceedings have commenced. *See, e.g., Meadows v. Kuhlmann,* 812 F.2d 72, 76 (2d Cir.), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). In New York, formal adversarial proceedings are commenced by the filing of an accusatory instrument with the criminal court. *See* N.Y.Crim.Proc.Law § 100.05 (McKinney 1993). Therefore, there is no right to counsel at an investigatory lineup. *Kirby v. Illinois,* 406 U.S. 682, 689–90, 92 S.Ct. 1877, 1882–83, 32 L.Ed.2d 411 (1972); *Boyd v. Henderson,* 555 F.2d 56, 60–61 (2d Cir.), *cert. denied,* 434 U.S. 927, 98 S.Ct. 410,

without merit. *See, e.g., United States ex rel. Pella v. Reid,* 527 F.2d 380, 384 (2d Cir.1975) (procedure was not unduly suggestive where relatively short defendant placed in lineup with taller fill-ins); *United State v. Jackson,* 509 F.2d 499, 505 (D.C.Cir.1974) (procedure did not violate due process where defendant was only participant with a "bush" or Afro hair style out of 11 men in lineup); *United States v. Castellano,* 610

F.Supp. 1359, 1440 (S.D.N.Y.1985) (lineup not unduly suggestive where defendant was only participant with pock-marked complexion which made him stand out from others); *Wright v. Smith,* 434 F.Supp. 339, 341–42 (W.D.N.Y.1977) (lineup not unduly suggestive where three of five participants were taller than defendant and had distinctly different hair styles), *rev'd on other grounds,* 569 F.2d 1188 (2d Cir.1978).

54 L.Ed.2d 286 (1977); *People v. Hawkins,* 55 N.Y.2d 474, 485–87, 450 N.Y.S.2d 159, 435 N.E.2d 376 (no right to counsel at investigatory lineups under New York State Constitution), *cert. denied,* 459 U.S. 846, 103 S.Ct. 103, 74 L.Ed.2d 93 (1982). Here, formal adversarial proceedings with respect to the charges which gave rise to the challenged convictions commenced on September 17, 1983, two days after the questioned lineup. *See* Mem.Supp.Pet. at 8. Accordingly, petitioner's Sixth Amendment right to counsel was not violated by the lineup.[9]

## Probable Cause for Arrest

In his petition and Response, petitioner raised a number of arguments in support of the contention that the police lacked probable cause to arrest him for criminal trespass and attempted burglary. *See* Pet. at 5; Response at 23–26. Petitioner argued that as he was not lawfully in custody the lineup identifications were illegally obtained and admitted into evidence in his trials for burglary and robbery. Further, petitioner argued that the Appellate Division erred in finding the probable cause issue unpreserved for appellate review. *See* Suppl.Mem.Supp.Pet. at 4. All of petitioner's arguments are without merit.

9. Petitioner also claims that his right to counsel was violated because, at the time of the lineup, he had already been arraigned on the unrelated indictment numbers 3313/83 and 3315/83. It is well-settled that under federal law the right to counsel is offense-specific. *McNeil v. Wisconsin,* 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991); *Boyd v. Henderson,* 555 F.2d 56, 61 (2d Cir.), *cert. denied,* 434 U.S. 927, 98 S.Ct. 410, 54 L.Ed.2d 286 (1977). Accordingly, even though petitioner's right to counsel on the criminal trespass and attempted burglary charges had attached, it had not attached with respect to the charges which gave rise to the challenged convictions. *Id.*

10. In his Response, petitioner argued that, although counsel did not specifically raise a Fourth Amendment claim during the suppression hearing for indictment number 3304/83, "the probable cause argument was offered throughout" the hearings. Response at 23–25. In support of this argument petitioner cited to the record of the suppression hearing held in connection with indictment number 3315/83. Again, that record,

As Magistrate Judge Orenstein correctly noted, "[w]here the state has provided a full and fair opportunity to litigate a Fourth Amendment claim, the constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground of a Fourth Amendment violation." Report at 20 (*citing Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992); *Grey v. Hoke,* 933 F.2d 117, 121 (2d Cir.1991)). *See also Stone v. Powell,* 428 U.S. 465, 481–82, 96 S.Ct. 3037, 3046, 49 L.Ed.2d 1067 (1976). Here, petitioner had a full and fair opportunity to raise a Fourth Amendment claim during two separate pre-trial suppression hearings. In each instance, defense counsel did not specifically raise such a claim.[10] Accordingly, petitioner's Fourth Amendment claim is not reviewable by this Court.[11]

Similarly, petitioner's objection to that portion of the Report which found that the Appellate Division correctly held his Fourth Amendment claim unpreserved for appellate review is without merit. Under New York law, a claim or error of law must be raised before the court of original jurisdiction prior to being raised on appeal. *See* N.Y.Crim.Proc.Law § 470.05(2) (McKinney 1993). *See also Taylor v. Harris,* 640 F.2d 1, 2 (2d Cir.) (*citing People v. Cona,* 49 N.Y.2d 26, 28, 424 N.Y.S.2d 146, 399 N.E.2d 1167 (1979)), *cert. denied,* 452 U.S. 942, 101 S.Ct.

along with the record for indictment number 3313/83, is not properly before this Court. In addition, counsel's mere indication that they "advanced the same arguments as in the other cases"—indictment numbers 3344/83, 3313/83 and 3315/83—is insufficient to sustain such an argument as no specific reference to a Fourth Amendment violation, or that the police lacked probable cause to arrest petitioner for criminal trespass or attempted burglary was made in the other hearings. Accordingly, this argument is without merit. *See e.g., United States ex rel. Tarallo v. LaVallee,* 433 F.2d 4, 7 (2d Cir.1970), *cert. denied,* 403 U.S. 919, 91 S.Ct. 2235, 29 L.Ed.2d 697 (1971).

11. *See Stone v. Powell,* 428 U.S. 465, 482, 96 S.Ct. 3037, 3046, 49 L.Ed.2d 1067 (1976); *Gates v. Henderson,* 568 F.2d 830, 836–40 (2d Cir.1977) (en banc) (a full and fair opportunity to litigate a Fourth Amendment claim only requires the mere presence of the opportunity, defendant need not avail himself of that opportunity), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978).

3089, 69 L.Ed.2d 958 (1981). The claim must be sufficiently specific to focus the attention of the trial court upon the particular issue being raised.[12] Here, the trial records are devoid of a specific reference to a claim of a Fourth Amendment violation or lack of probable cause for arrest, and the Appellate Division properly held this issue unpreserved for appellate review. *See Collins, supra,* 136 A.D.2d at 724, 523 N.Y.S.2d 1020.[13] Accordingly, as petitioner has failed to allege sufficient cause and prejudice for this procedural default, or that a fundamental miscarriage of justice would result, this Court cannot review the claim. *See Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).[14]

### Fair Trial

Petitioner argues that he was denied the right to a fair trial because of a number of errors in both trials. In the Report, Magistrate Judge Orenstein correctly noted that a number of the claimed errors were not subject to federal habeas corpus review. Report at 26–28.[15] Magistrate Judge Orenstein also found that none of the claimed errors alone were "so inherently prejudicial as to pose an unacceptable threat to [petitioner's] right to a fair trial." Report at 25 (*quoting Holbrook v. Flynn,* 475 U.S. 560, 572, 106 S.Ct. 1340, 1347–48, 89 L.Ed.2d 525 (1986)). In addition,

Magistrate Judge Orenstein noted that petitioner failed to demonstrate actual prejudice from any of the alleged errors. Report at 25–40. Therefore, Magistrate Judge Orenstein recommended that all of petitioner's arguments be rejected.

In his Response, petitioner contended that although each error alone may not rise to the level of a constitutional violation, the cumulative effect of the errors was so prejudicial that he was denied the right to a fair trial. Response at 27. This claim also is without merit.

■ The issue of the cumulative effect of a number of different trial errors on a criminal defendant's right to a fair trial has not been addressed directly by either the Supreme Court or the Second Circuit Court of Appeals.[16] However, the Second Circuit has addressed the cumulative effect of a prosecutor's remarks during summation on a defendant's right to a fair trial. *See Floyd v. Meachum,* 907 F.2d 347, 353–57 (2d Cir. 1990); *Garofolo v. Coomb,* 804 F.2d 201, 206 (2d Cir.1986). In *Floyd,* the Second Circuit stated that the denial of the right to a fair trial would exist where the cumulative effect of the prosecutor's remarks was so prejudicial that it rendered the trial in question fundamentally unfair. *Floyd, supra,* 907 F.2d at 353. This formulation of the "cumu-

---

**12.** *See Gates, supra,* 568 F.2d at 836–38. *See also Barber v. Scully,* 731 F.2d 1073, 1074 (2d Cir.1984) (in relation to requirement of contemporaneous objection at trial) (*citing People v. Jones,* 81 A.D.2d 22, 36, 41–42, 440 N.Y.S.2d 248 (2d Dep't 1981)).

**13.** Although certain constitutional rights are deemed so fundamental as to preclude waiver by failing to raise the issue at trial, such is not the case with lack of probable cause to arrest. *See, e.g., Barber, supra; Jones, supra.*

**14.** Petitioner claimed that "trial counsel did not argue the probable cause issue on the record(s) of 3344/83 because that hearing was held out of order" with the hearings on the other indictments, specifically indictment number 3315/83. Response at 25. This is insufficient to establish cause and prejudice for not raising the Fourth Amendment claim during the suppression hearings of the indictments which gave rise to the challenged convictions. As stated previously, there is nothing in the records of any of the other suppression hearings which shows a specific ref-

erence by counsel to a violation of petitioner's Fourth Amendment rights or lack of probable cause for his arrest. Accordingly, petitioner's argument is without merit.

**15.** *See Carroll v. Hoke,* 695 F.Supp. 1435, 1439–40 (E.D.N.Y.1988) (*citing Luce v. United States,* 469 U.S. 38, 43, 105 S.Ct. 460, 464, 83 L.Ed.2d 443 (1984), and analogizing trial court's *Sandoval* ruling to federal court ruling in *Luce* ), *aff'd mem.,* 880 F.2d 1318 (2d Cir.1989). *See also McGuire, supra,* 502 U.S. at 67–68, 112 S.Ct. at 479–80; *Peterson v. LeFevre,* 753 F.Supp. 518, 521 (S.D.N.Y.), *aff'd mem.,* 940 F.2d 649 (2d Cir.1991); *Underwood v. Kelly,* 692 F.Supp. 146, 151 (E.D.N.Y.1988), *aff'd mem.,* 875 F.2d 857 (2d Cir.), *cert. denied,* 493 U.S. 837, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989); *Collins v. Scully,* 755 F.2d 16, 18 (2d Cir.1985).

**16.** *See Derden v. McNeel,* 978 F.2d 1453, 1456 (5th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2928, 124 L.Ed.2d 679 (1993); *Sanders v. Sullivan,* 701 F.Supp. 1008, 1012 (S.D.N.Y. 1988).

lative-error" doctrine is utilized by various federal circuits with respect to different types of trial errors.[17] Accordingly, this Court will apply the cumulative-error doctrine discussed in *Floyd* to determine whether the claimed errors were so prejudicial that they rendered petitioner's trials fundamentally unfair. *See United States v. Araujo*, 539 F.2d 287, 292 (2d Cir.) (rejecting cumulative error argument in particular case but noting that "[u]nder other circumstances, there might be force to this argument."), *cert. denied sub nom. Rivera v. United States*, 429 U.S. 983, 97 S.Ct. 498, 50 L.Ed.2d 593 (1976).

■ In applying the cumulative-error doctrine, this Court is cognizant that the Supreme Court has "defined the category of errors that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990). In addition, only *errors committed by the trial court* may be considered in such an analysis. *See, e.g., Sanders v. Sullivan*, 701 F.Supp. 1008, 1013 (S.D.N.Y.

1988) (emphasis supplied). A habeas petitioner may not aggregate merely unfavorable rulings or events to show a lack of fundamental fairness. *See United States v. Rivera*, 900 F.2d 1462, 1470–71 (10th Cir.1990) (en banc). Moreover, the Fifth Circuit has held that such errors must be subject to federal habeas review lest a petitioner get improper claims into federal court through the back door. *See Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 2928, 124 L.Ed.2d 679 (1993).

■ After a careful review of the record, petitioner's argument must be rejected. As Magistrate Judge Orenstein correctly noted, some of the claimed errors are not errors at all.[18] In addition, a number of the alleged errors are not subject to federal habeas corpus review or do not present issues of fundamental fairness.[19] Moreover, petitioner has failed to establish inherent or actual prejudice resulting from any of the alleged errors which are without question open to this cumulative-error analysis.[20] Accordingly, the cumulative effect of the alleged errors could

---

**17.** *See, e.g., Derden, supra*, 978 F.2d at 1454 (5th Cir.1992); *Lundy v. Campbell*, 888 F.2d 467, 481 (6th Cir.1989), *cert. denied*, 495 U.S. 950, 110 S.Ct. 2212, 109 L.Ed.2d 538 (1990); *Bell v. Duckworth*, 861 F.2d 169, 170 (7th Cir.1988), *cert. denied*, 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989); *Walker v. Davis*, 840 F.2d 834, 838 (11th Cir.1988); *United States v. McLister*, 608 F.2d 785, 788–90 (9th Cir.1979); *United States v. Diharce–Estrada*, 526 F.2d 637, 642 (1st Cir.1976); *United States ex rel. Cannon v. Maroney*, 373 F.2d 908, 910 (3d Cir.1967). *But see Scott v. Jones*, 915 F.2d 1188, 1191 (8th Cir.1990) ("each habeas claim must stand or fall on its own"), *cert. denied*, 499 U.S. 978, 111 S.Ct. 1626, 113 L.Ed.2d 723 (1991).

**18.** For example, it was not error for the trial court to refuse to strike Mr. Zarin's entire testimony as unresponsive. Although Mr. Zarin was an uncooperative witness, the court admonished him on several occasions and struck as unresponsive those portions of his testimony when requested by counsel (T.3304/83 at 171, 198, 255). Following the entire cross-examination, defense counsel requested that all of the testimony be stricken as unresponsive (T.3304/84 at 245). Defense counsel's request was not appropriate given the entire testimony was not unresponsive (T.3304/83 at 139–255).

**19.** For example, the trial court's *Sandoval* ruling is not ordinarily subject to federal habeas review.

*See supra* note 15. In addition, as petitioner was always aware that the prosecution intended to prove that he acted with another, the trial court's granting of the prosecution's motion to amend the indictment to add the words "acting in concert with another" did not effect the fairness of petitioner's trial.

**20.** For example, petitioner claims that the court erred by failing to include a circumstantial evidence instruction, and that the instruction on accomplice liability was prejudicial and improper. There is no indication in the record, however, that the prosecution relied on circumstantial evidence in proving its case (T.3304/83 at 399–401). In addition, despite petitioner's contention that the court charged the jury that "the verdict must be the same for both defendants" (Aff.Supp.1986 Mot.Vac. at 2), there is no indication that such a charge was ever made (T.3304/83 at 366–402). In fact, on at least one occasion, the trial judge instructed the jury that it must "render separate verdicts as to each defendant" (T.3304/83 at 378). Therefore, petitioner suffered no inherent or actual prejudice from the trial court's jury charge. *See Henderson v. Kibbe*, 431 U.S. 145, 155, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203 (1977) (an omission is less likely to be prejudicial than a misstatement of the law); *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973) (jury charge does not deprive a criminal defendant of his constitutional rights if the charge as a whole is correct).

not render petitioner's trial fundamentally unfair. *See, e.g., Brecheen v. Reynolds,* 41 F.3d 1343, 1370 n. 23 (10th Cir.1994); *Niziolek v. Ashe,* 694 F.2d 282, 293 (1st Cir.1982); *United States v. Berry,* 627 F.2d 193, 207 (9th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843 (1981).

### Speedy Trial

Petitioner raised two claims with respect to the delay in his trials. First, that the trial court erred in applying the provisions of § 30.30 of the New York Criminal Procedure Law. Second, that the delay violated the Sixth Amendment right to a speedy trial. While petitioner has made no specific objections to that portion of the Report which discusses his speedy trial claims, this Court will briefly address these issues.

 As Magistrate Judge Orenstein correctly noted, federal courts are precluded from reviewing a state court's rulings on state procedural law issues. *See, e.g., Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 479–80, 116 L.Ed.2d 385 (1991). Therefore, this Court cannot address petitioner's claims that the trial court erred in applying the provisions of § 30.30 of the New York Criminal Procedure Law. *See LoPizzo v. LeFevre,* 863 F.Supp. 96, 100 (E.D.N.Y.1994). This Court can, however, determine whether petitioner's Sixth Amendment right to a speedy trial has been violated. *See, e.g., Barker v. Wingo,* 407 U.S. 514, 518, 92 S.Ct. 2182, 2186, 33 L.Ed.2d 101 (1972). Here, approximately thirteen months elapsed between petitioner's indictments and trials. While there is no rule which establishes a specific time limit within which a trial must commence, federal courts have consistently held that much longer delays do not violate the Sixth Amendment. *See, e.g., id.* at 533–36, 92 S.Ct. at 2193–95 (five years); *Flowers v. Warden, Connecticut Correctional Institution,* 853 F.2d 131, 134 (2d Cir.) (17 months) (cases cited therein), *cert. denied,* 488 U.S. 995, 109 S.Ct. 563, 102 L.Ed.2d 588 (1988). Moreover, petitioner has not established any prejudice resulting from the delay which would warrant a finding of a Sixth Amendment violation.[21] Accordingly, petitioner's speedy trial claims are without merit. *See Barker, supra.*

### Conclusion

Accordingly, this Court adopts the recommendation contained in the Magistrate Orenstein's Report and Recommendation. The petition for a writ of habeas corpus is dismissed and a certificate of probable cause is denied.

SO ORDERED.

---

21. *Compare United States ex rel. Spina v. McQuillan,* 525 F.2d 813, 818 (2d Cir.1975) (no prejudice where 26 month delay cost defendant his job and witnesses became unavailable for trial) *with*

*United States v. Roberts,* 515 F.2d 642, 646 (2d Cir.1975) (finding of prejudice where nine month delay disqualified defendant for youthful offender status).